B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Cherice Elaine White | DEFENDANTS<br>Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage, Federal National Mortgage Association, and HSBC Bank USA, N.A. as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass through Certificate Series 2006-8 |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Karen L. Kellett<br>Kellett & Bartholow PLLC, 11300 N. Central Expressway, Suite 301, Dallas, TX 75243 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Violations of 1) the Plan and Order Confirming the Plan; 2) 11 U.S.C § 506 and Fed. R. Bankr. P. 2016; 3) Fed. R. Bankr. P. 3002.1; 4) Automatic Stay; 5) Discharge Order and 11 U.S.C. § 524(i); 6) Contempt; 7) Breach of Contract; 8) RESPA; 9) TDCA; and 10) FDCPA.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Cherice Elaine White | BANKRUPTCY CASE NO.<br>15-35164 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Dallas | NAME OF JUDGE<br>Houser |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| *Karen Kellett* | | |
| DATE<br>02/18/2020 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Karen L. Kellett | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 15-35164** |
| **CHERICE ELAINE WHITE** | § | |
| | § | **CHAPTER 13** |
| Debtor | § | |
| | § | |
| | § | |
| **CHERICE ELAINE WHITE** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **ADVERSARY NO.** _____ |
| | § | |
| **WELLS FARGO BANK, N.A. d/b/a** | § | |
| **WELLS FARGO HOME MORTGAGE** | § | |
| | § | |
| **FEDERAL NATIONAL MORTGAGE** | § | |
| **ASSOCIATION and** | § | |
| | § | |
| **HSBC BANK USA, N.A. as Trustee for** | § | |
| **WELLS FARGO ASSET SECURITIES** | § | |
| **CORPORATION, MORTGAGE PASS-** | § | |
| **THROUGH CERTIFICATES SERIES** | § | |
| **2006-8** | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Cherice Elaine White, Plaintiff, and files this suit against Wells Fargo

Bank, N.A., Wells Fargo Bank d/b/a Wells Fargo Home Mortgage ("Wells Fargo"), the Federal

National Mortgage Association ("Fannie Mae"), and HSBC Bank USA, N.A. as Trustee for Wells

Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-8

("HSBC"), Defendants, and in support hereof, would respectfully show the Court:

## I. INTRODUCTION

1.     Plaintiff is suing Wells Fargo for its flagrant mismanagement of her mortgage loan account during and outside of her two bankruptcy cases, which has greatly and negatively impacted Plaintiff's life and the lives of her two children.  Plaintiff has been fighting since 2010 to keep her home, through two foreclosure attempts by Wells Fargo, two bankruptcy cases, and a wrongful foreclosure sale resulting in months of harassment by third parties due to Wells Fargo's failure to properly rescind the sale.  Despite Plaintiff making her payments and performing under the terms of the loan and two Chapter 13 plans, Wells Fargo has repeatedly misapplied payments from Plaintiff and the Chapter 13 trustee.  As a result, Wells Fargo has failed to credit Plaintiff's account, and continued to demand payment in excess of amounts actually due.

2.     Plaintiff, a once physically disabled single mother, was fighting her ex-husband for custody of her youngest daughter when Wells Fargo first threatened to foreclose on her home.  The divorce court awarded Plaintiff sole ownership of the home in the divorce, yet because Plaintiff's ex-husband was the named borrower on the corresponding note, Wells Fargo refused to speak with Plaintiff and refused Plaintiff's payments, even though the payments clearly specified the address and loan number.  Instead of updating its records following receipt of the divorce documents, Wells Fargo continued to give Plaintiff the run-around, forcing her to file bankruptcy to prevent foreclosure.  Plaintiff was desperate to save her home, and thus she found a way to make it all work financially: she gave up her vehicle in her first bankruptcy case, and she accepted assistance from several charitable organizations to make ends meet while paying both her mortgage payments and bankruptcy plan payments.

3.      Plaintiff should have emerged from her first bankruptcy with a clean slate. However, during her case, Wells Fargo misapplied numerous direct regular monthly payments made by Plaintiff and pre-petition arrearage payments made by the Chapter 13 trustee. Instead of applying payments to Plaintiff's home loan, Wells Fargo instead applied some of her payments to another loan, also serviced by Wells Fargo, which relates to a small rental property owned by the Plaintiff – her separate property prior to her divorce. In some cases, Wells Fargo failed to apply payments to either loan. Unbeknownst to Plaintiff, Wells Fargo's payment misapplications caused her to fall further and further behind on the monthly payments due under her home mortgage.

4.      Due to Wells Fargo's late-amended claim, Plaintiff reached the end of her first plan with another $9,261.53 due toward Wells Fargo's pre-petition arrearage claim, which she planned to pay directly to Wells Fargo. Instead of demanding the $9,261.53 upon Plaintiff's discharge from her first bankruptcy, Wells Fargo demanded over *$60,000.00* from Plaintiff and immediately pursued foreclosure again, scheduling a sale date just three months following her discharge and again forcing Plaintiff to file bankruptcy to save her home. It was only then that Plaintiff discovered that Wells Fargo's greatly inflated demand resulted from its failure to properly apply her payments during her first bankruptcy. To make matters worse, Wells Fargo selectively participated in Plaintiff's current bankruptcy, filing objections and mortgage payment change notices, but failing to file a proof of claim, preventing Plaintiff from curing any alleged deficiency through her Chapter 13 plan. Wells Fargo continued to misapply payments from Plaintiff and the chapter 13 trustee in her current bankruptcy. Despite Plaintiff's many efforts to address these issues with Wells Fargo directly, Wells Fargo failed to correct its payment misapplications and continued to be evasive with Plaintiff and her counsel in response to Plaintiff's multiple RESPA Requests for Information and

Notices of Error. To add insult to injury, Wells Fargo as servicer recently transferred the servicing rights of the Homestead Property to SN Servicing Corporation, and, allegedly, the note is now held by U.S. Bank National Association as Trustee of the Igloo Series IV Trust. SN Servicing and U.S. Bank filed a motion for relief from stay seeking to foreclose in Ms. White's underlying bankruptcy case, stating falsely that Ms. White had failed to make thirty-four (*34*) post-petition mortgage payments. In fact, Ms. White has only missed one payment since filing her second bankruptcy in December of 2015, when her younger brother passed away unexpectedly and she had to pay for funeral arrangements. Ms. White is addressing that payment in an amended plan. Thus, Wells Fargo's actions in misapplying payments and otherwise failing to comply with bankruptcy law continue to imperil Ms. White's homestead property and her equity in it.

5. Wells Fargo's actions have caused significant stress and anxiety for Plaintiff. In addition, Wells Fargo's conduct has prevented Plaintiff from moving on with her life, causing credit damage and an inability to obtain credit. Accordingly, by this suit, Plaintiff seeks to recover actual damages, including out-of-pocket costs, attorneys' fees, and mental and emotional distress damages, as well as punitive damages against Defendants in an amount sufficient to provide appropriate retribution and deterrence such that this type of conduct is effectively remedied.

## II. PARTIES AND SERVICE

6. Plaintiff Cherice Elaine White f/k/a Cherice Elaine White-El-Amin ("Ms. White" or "Plaintiff") is an individual whose address is 1209 Hollow Crest Drive, Desoto, TX 75115. She was the debtor in *In re Cherice Elaine White-El-Amin*, Case No. 10-33061, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. She is currently the debtor

in *In re Cherice Elaine White*, Case No. 15-35164, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

7.     Defendant Wells Fargo is a national bank with its principal place of business located in San Francisco, California, which both owns mortgages and also conducts mortgage servicing under the name of its mortgage division, Wells Fargo Home Mortgage. Wells Fargo may be served with process through its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

8.     Defendant Fannie Mae is a government-sponsored enterprise headquartered in Washington, D.C. Fannie Mae does not maintain a registered agent in the State of Texas. Fannie Mae may be served through Hugh R. Frater, its Chief Executive Officer, at 1100 15th Street, NW, Washington, D.C. 20005.

9.     Wells Fargo asserted that it was the owner of the note or the "creditor" on the Homestead Property throughout the two bankruptcy cases, and Wells Fargo also acted as servicer to Wells Fargo on the Homestead Property. However, by letter dated September 7, 2017, Wells Fargo stated that Fannie Mae was the owner/assignee of the note on the Homestead Property. As such, and on information and belief, for at least a certain period of time relevant to this lawsuit, Wells Fargo acted as servicer and agent for Defendant Fannie Mae with respect to Plaintiff's homestead located at 1209 Hollow Crest Dr., Desoto, TX 75115.[1]

---

[1] U.S. Bank, as part of its motion for relief from stay, filed a document in the underlying bankruptcy case showing an alleged transfer of the note and deed of trust from MERS, solely as nominee for Intrust Mortgage, Inc., Its successors and assigns" to Wells Fargo Bank, N.A, dated April 29, 2010. 2015 Bankruptcy Docket No. 53. On September 7, 2017, Wells Fargo stated that Fannie Mae was the owner/assignee of the note. At 2015 Bankruptcy Docket No. 53, there is a copy of an assignment from Wells Fargo Bank, N.A. to U.S. Bank National Association as Trustee of the Igloo Series IV Trust, dated September 27, 2019. Thus, presumably, the note for the Homestead Property was at some point transferred from Wells Fargo Bank, N.A. to Fannie Mae, and then at some later date transferred back to Wells Fargo Bank, N.A.

10. Defendant HSBC is a foreign financial institution headquartered in Delaware. HSBC may be served with process through its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, TX 75201.

11. At all times relevant to this suit, Defendant Wells Fargo acted as agent for HSBC with respect to Plaintiff's rental property located at 470 Justice Drive, Cedar Hill, TX 75104.

### III. JURISDICTION, AUTHORITY, AND VENUE

12. This matter is related to *In re Cherice Elaine White*, Case No. 15-35164, filed in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

13. This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334 and §§ 157(b) and (c).

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claims occurred in this district, Plaintiff filed for bankruptcy protection in this district, and Defendant regularly transacts business in this district.

15. Pursuant to the Fed. R. Bankr. P. 7008(a), Plaintiff states that to the extent the Court determines that any portion of this complaint is non-core, Plaintiff consents to the entry of final orders or judgment in this adversary proceeding by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution. Further, to the extent that any court determines that the Bankruptcy Court does not have authority to enter a final judgment on any cause of action set forth herein, Plaintiff requests that the Bankruptcy Court issue a report and recommendation for a judgment to the United States District Court for the Northern District of Texas on any such cause of action.

# IV.  FACTUAL ALLEGATIONS

***The Homestead Property and Loan.***

16.     On December 14, 2007, Plaintiff and Plaintiff's now ex-husband, Hassan S. El-Amin ("Mr. El-Amin"), executed a deed of trust in favor of Intrust Mortgage, Inc. ("Intrust") regarding Plaintiff's homestead property located at 1209 Hollow Crest Drive, DeSoto, Texas 75115 (the "Homestead Property").  The deed of trust secured payment of a certain promissory note executed by Mr. El-Amin payable to Intrust for a mortgage loan.  True and correct copies of the deed of trust and the promissory note for the Homestead Property (collectively, the "Homestead Loan") are attached hereto as composite **Exhibit 1**. It appears that Intrust endorsed the note to AmTrust Bank, which endorsed the note in blank.  Mr. El-Amin is the only borrower listed on the Homestead Loan.  The monthly principal and interest payment due on the Homestead Loan was $1,264.00. The Homestead Loan was set up without an escrow account.

17.     Upon information and belief, Wells Fargo obtained servicing rights to the Homestead Loan on or about May 1, 2008.

***The Justice Property and Loan.***

18.     Plaintiff also owns rental property at 470 Justice Drive, Cedar Hill, Texas 75104 (the "Justice Property").  On April 13, 2006, Plaintiff executed a deed of trust and promissory note in favor of Wells Fargo Bank, National Association.  Plaintiff's obligation to pay this promissory note is secured by the deed of trust for the Justice Property.  True and correct copies of the deed of trust and promissory note for the Justice Property (collectively, the "Justice Loan") are attached hereto as composite **Exhibit 2**.  Plaintiff is the only borrower listed on the promissory note for the Justice Property.

19.     Upon information and belief, Wells Fargo has held servicing rights to the Justice Loan at all relevant times herein, and Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-8 has been the owner of the Justice Loan, with HSBC Bank USA, N.A. acting as trustee for same.

***The divorce and award of the Homestead and Justice Properties to Plaintiff.***

20.     Plaintiff and Mr. El-Amin divorced on March 10, 2010, in Case No. DF-08-22400 in the 302nd District Court Dallas County, Texas.  A true and correct copy of the divorce decree is attached hereto as **Exhibit 3**.  In the divorce decree, the court ordered that Ms. White would retain the Homestead Property and pay all debts relating to the Homestead Property.  The court also determined that the Justice Property was Plaintiff's separate property.

21.     Despite Plaintiff repeatedly providing Wells Fargo copies of the divorce decree, Plaintiff experienced continuous issues with access to her mortgage account information related to the Homestead Property and account, on which she is listed as an obligor.

22.     Due to inconsistency in income prior to and during the divorce, including a lack of rental income from the Justice Property, Plaintiff fell behind on mortgage payments related to the Homestead Property.  Plaintiff sought loss mitigation options with Wells Fargo, including forbearance, but was unable to secure such options before a foreclosure sale was scheduled for May 4, 2010.

***Plaintiff files her first chapter 13 bankruptcy case to avoid foreclosure.***

23.     On May 1, 2010, Plaintiff filed her Chapter 13 bankruptcy petition, Case No. 10-33061, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division

(the "2010 Bankruptcy"),[2] in order to stop Wells Fargo from foreclosing on the Homestead Property.

24. Despite notice of Plaintiff's Chapter 13 bankruptcy being sent to Wells Fargo prior to the foreclosure sale, Wells Fargo sold the Homestead Property at foreclosure on May 4, 2010.

25. In June 2010, Wells Fargo's foreclosure counsel sent Plaintiff a notice of eviction.

26. Nearly three months after the improper foreclosure, Wells Fargo's foreclosure counsel filed an affidavit in the Dallas County property records stating that the trustee's deed issued at the foreclosure sale was void due to Plaintiff's bankruptcy filing. Despite the filing of the affidavit, Plaintiff continued to receive notices to vacate and harassing telephone calls, leaving Plaintiff in constant fear that she would lose her home.

27. On May 17, 2010, Plaintiff filed her bankruptcy schedules and Chapter 13 plan, which provided for payment to Wells Fargo for an arrearage amount of $36,000.00 related to the Homestead Property and direct payments for her ongoing mortgage loan obligations for both the Homestead Property and the Justice Property. *See* 2010 BK Docket No. 8, p. 1 and 9; 2010 BK Docket No. 13.

28. Wells Fargo filed Proof of Claim No. 3-1 related to the Justice Property on May 25, 2010. *See* Claims Register in 2010 BK, Claim No. 3-1.

29. Wells Fargo did not file a timely proof of claim in Case No. 10-33061 related to the Homestead Property.

---

[2] Documents filed in Plaintiff's 2010 Bankruptcy will be cited to as "2010 BK Docket No. x."

*Wells Fargo begins misapplying payments from Plaintiff and Trustee.*

30.     From the beginning of Plaintiff's first bankruptcy case (and continuing through her second bankruptcy, as discussed below), Wells Fargo repeatedly misapplied amounts paid by Plaintiff directly to Wells Fargo *and* funds paid by the Chapter 13 Trustee by, among others, 1) failing to apply payments to either the Homestead Property account or the Justice Property account, 2) applying payments made towards Plaintiff's Homestead Property to the account for the Justice Property, 3) applying only partial payments made by Plaintiff and the Chapter 13 Trustee, 4) applying payments in incorrect and undisclosed amounts, 5) failing to file Notices of Mortgage Payment Change related to several escrow analyses performed for the Homestead Property, 6) filing incorrect and bogus Notices of Mortgage Payment Change, and 7) applying payments to fees and charges for which it had not filed proper Fed. R. Bankr. P. 3002.1 Notice of Post-Petition Fees and Expenses.

31.     Attached as Appendix 1 hereto is a payment history constructed from Plaintiff's documents and bank records, as well as the transaction histories provided by Wells Fargo.[3] Appendix 1 is abbreviated as "App. 1."

32.     On May 28, 2010, Plaintiff made a direct payment of $1,264.00 to Wells Fargo for June 1, 2010 post-petition amounts due under the Homestead Loan.  The May 28, 2010 payment consisted of three MoneyGram money orders, numbered R103184096235, R103184096236, and R103184096237, totaling $1,264.00.  App. 1 at line 1.  *See also* **Exhibit 4**.

---

[3] Appendix 1 is a complete record of all the payments made by Plaintiff during both of her bankruptcy cases through December 2019.  In the text of this Complaint, Plaintiff discusses only the payments which Wells Fargo misapplied or failed to apply.

33. Wells Fargo incorrectly applied Plaintiff's entire May 28, 2010 payment in the amount of $1,264.00 to the Justice Loan instead of the Homestead Loan. App. 1 at line 1. *See also* **Exhibits 5**, Homestead Property "Customer Account Activity Statement, and **Exhibit 6**, Justice Property "Customer Account Activity Statement."

34. On June 29, 2010, Plaintiff made an additional direct payment of $1,264.00 to Wells Fargo for post-petition amounts due under the Homestead Loan. The June 29, 2010 payment consisted of three MoneyGram money orders, numbered R103184010025, R103184100503, and R103184100514, totaling $1,264.00. App. 1 at line 2. *See also* **Exhibit 4**.

35. Upon information and belief, Wells Fargo received, but failed to apply, Plaintiff's June 29, 2010 payment to either loan. App. 1 at line 2. *See also* **Exhibits 5** and **Exhibit 6**.

***Plaintiff confirms chapter 13 plan and files claim on behalf of Wells Fargo.***

36. On July 27, 2010, the Court confirmed Plaintiff's Chapter 13 plan. *See* 2010 BK Docket No. 24.

37. To ensure Plaintiff's arrearage on the Homestead Property would be paid through the Chapter 13 plan, Ms. White's bankruptcy counsel filed Proof of Claim No. 18-1 on behalf of Wells Fargo on September 13, 2010, including $36,000.00 in estimated arrears on the Homestead Loan. *See* Claims Register in 2010 BK, Claim No. 18-1.

***Wells Fargo continues to misapply payments from Plaintiff and Trustee.***

38. Meanwhile, Wells Fargo kept misapplying payments. On August 31, 2010, Plaintiff made a direct payment of $1,264.00 to Wells Fargo for post-petition amounts due under the Homestead Loan. The September 10, 2010 payment consisted of three MoneyGram money orders,

numbered R1027388838620, R102738838609, and R102738838610, to Wells Fargo, totaling $1,264.00. App. 1 at line 4. *See also* **Exhibit 4**.

39.     Wells Fargo applied Plaintiff's August 31, 2010 payment to the Justice Loan in the amount of $1,000.00.  Upon information and belief, Wells Fargo received, but failed to apply, the remaining $264.00 from the August 31, 2010 payment to either loan. App. 1 at line 4. *See also* **Exhibits 5** and **6**.

40.     On September 29, 2010, Plaintiff made a direct payment of $1,264.00 to Wells Fargo for post-petition amounts due under the Homestead Loan.  The September 29, 2010 payment consisted of three MoneyGram money orders, numbered R102738842151, R102738842173, and R102738842162, to Wells Fargo, totaling $1,264.00. App. 1 at line 5. *See also* **Exhibit 4**.

41.     Upon information and belief, Wells Fargo received, but failed to apply, Plaintiff's September 29, 2010 payment to either loan. App. 1 at line 5. *See also* **Exhibits 5** and **6**.

42.     However, Wells Fargo did receive the September 24, 2020 payment from the Chapter 13 Trustee in the amount of $23.66, which Wells Fargo misapplied as a credit to the Justice Loan. *See* **Exhibit 6**.  As required under Plaintiff's Chapter 13 plan, Wells Fargo was supposed to apply all Chapter 13 Trustee payments to Plaintiff's arrearage under the Homestead Loan, and not the Justice Loan.

43.     On November 1, 2010, and again on November 30, 2010, Plaintiff made two direct payments of $1,264.00 each to Wells Fargo for post-petition amounts due under the Homestead Loan.  The November 1, 2010 payment consisted of three MoneyGram money orders, numbered R10273883245, R10273883823, and R10273882834, to Wells Fargo, totaling $1,264.00. The

November 30, 2010 payment consisted of three MoneyGram money orders, numbered R10380987181, R103809871825, and R103809871836, to Wells Fargo, totaling $1,264.00. App. 1 at line 6-7. *See also* **Exhibit 4**.

44. Upon information and belief, Wells Fargo received Plaintiff's November 1 and November 30, 2010 payments but failed to apply the payments to either loan. App. 1 at line 6-7. *See also* **Exhibits 5** and **6**.

45. On January 3, 2011, Plaintiff made a direct payment of $1,264.00 to Wells Fargo for post-petition amounts due under the Homestead Loan. The January 3, 2011 payment consisted of three MoneyGram money orders, numbered R103809876984, R103809874973, and R10380987699, to Wells Fargo, totaling $1,264.00. App. 1 at line 8. *See also* **Exhibit 4**.

46. Wells Fargo applied $1,000.00 of Plaintiff's January 3, 2011 payments to the Homestead Loan and $264.00 to the Justice Loan. App. 1 at line 8. *See also* **Exhibits 5** and **6**.

***Wells Fargo files a motion for relief based on non-existent default.***

47. Wells Fargo filed a motion for relief from the automatic stay related to the Homestead Property on January 26, 2011, alleging that Plaintiff was in default on eight post-petition payments of $1,671.37. Plaintiff had not failed to make eight post-petition mortgage payments.

48. Wells Fargo ultimately withdrew its motion for relief from the automatic stay on June 13, 2011, following discussions between counsel for both parties. *See* 2010 Bankruptcy Docket No. 49.

***TRCC sets arrearage on Homestead, Wells Fargo does not object.***

49.     On April 22, 2011, the Trustee filed his Recommendation Concerning Claims ("TRCC"), recommending payment of arrears to Wells Fargo related to the Homestead Property in the amount of $36,000.00, as listed in the debtor-filed Proof of Claim No. 18. *See* 2010 BK Docket No. 42.

50.     The TRCC was approved by the Court on July 27, 2011, with no changes to treatment of the Homestead arrearage claim. *See* 2010 BK Docket No. 54.

51.     Wells Fargo had knowledge of, and participated in, the bankruptcy with respect to the Homestead Property prior to the filing of the TRCC, yet it failed to object to treatment of the Homestead Property arrearage in the TRCC.

***Wells Fargo amends claim and misstates arrearage and escrow shortage.***

52.     On September 27, 2011, Wells Fargo amended Proof of Claim No. 18-1 (filed as Claim No. 18-2) which increased the alleged arrearage amount to $45,625.99. *See* Claims Register in 2010 BK, Claim No. 18-2.  Claim No. 18-2 also included an alleged "escrow shortage" of $19,633.12 and listed a monthly payment amount of $1,671.37, allegedly "effective as of June 1, 2010." *Id.*

53.     However, this was the first time that Wells Fargo had disclosed to Plaintiff or the Court that an escrow account existed.  Wells Fargo filed its Claim No. 18-1 late—over one year after the bar date and nearly a year and a half after the Petition Date—yet Wells Fargo failed to file any notice of a payment change reflecting this increased amount or otherwise notify Plaintiff of the

escrow account during this time.[4] Wells Fargo's internal records from that time period reflect an escrow advance of $14,724.58 as of the date Plaintiff's 2010 bankruptcy was filed, but again, there was no communication with Plaintiff or the Court on this issue. *See* Customer Account Statement dated March 22, 2017 showing application of payments to escrow, a true and correct copy of which is attached hereto as **Exhibit 7**.

54.     The escrow analysis attached to Wells Fargo's Claim No. 18-2 was troublesome because the analysis covered a two-year period. Unaware of the escrow account, Plaintiff continued to pay her own taxes and insurance during this time period. As described below, this resulted in an overpayment to the taxing authority and a subsequent tax refund to Plaintiff.

55.     Because Wells Fargo failed to notify Plaintiff or the Court of the escrow account and the increased monthly payments resulting from same, Plaintiff made her regular monthly payment on the Homestead Loan in the amount of $1,264.00 in the first year and a half of her first bankruptcy case, and continued to make payments in that amount until June 2012, when she and/or her counsel finally became aware of the increased payments.

56.     Upon information and belief, Wells Fargo also included a post-petition escrow shortage in Claim No. 18-2, while also applying Plaintiff's post-petition monthly mortgage direct payments to those same amounts during her 2010 Bankruptcy.

57.     Wells Fargo filed a motion to allow its amended claim on September 30, 2011, which was granted on November 18, 2011. *See* 2010 BK Docket Nos. 57 and 61.

---

[4] Contributing to the problem was Wells Fargo's refusal to deal with Plaintiff directly on her mortgage loan, as Wells Fargo was still requiring authorization from Plaintiff's estranged ex-husband and, on information and belief, was communicating exclusively with him, if at all, regarding the Homestead Loan.

*Wells Fargo files Notice of Payment Change and misapplies more payments.*

58. On March 23, 2012, Wells Fargo filed a Notice of Mortgage Payment Change related to the Homestead Property, including a massive increase in Plaintiff's escrow payment from $407.23 per month to $1,551.83 per month due to an alleged escrow shortage of $7,804.81, resulting in an alleged total monthly mortgage payment of $2,815.97, effective June 1, 2012. A true and correct copy of the March 23, 2012 Notice of Payment Change for the Homestead Property is attached hereto in composite **Exhibit 8**.

59. Upon information and belief, this alleged escrow shortage was a result of Wells Fargo's failure to properly apply Plaintiff's post-petition monthly payments toward the Homestead Property and inform Plaintiff and the Bankruptcy Court of the amount of her monthly payments during the bankruptcy.

60. On August 31, 2012, Plaintiff made a direct payment of $1,671.00 to Wells Fargo for post-petition amounts due under the Homestead Loan. The August 31, 2012 payment consisted of four MoneyGram money orders, numbered R104838104987, R104838104998, R104838105009, and R104838105010, to Wells Fargo, totaling $1,671.00. App. 1 at line 28. *See also* **Exhibit 4**.

61. Wells Fargo applied Plaintiff's entire August 31, 2012 payment of $1,671.00 to the Justice Loan. App. 1 at line 28. *See also* **Exhibits 5** and **6**.

*Wells Fargo files 3002.1 notices, amends claim, and misapplies more payments.*

62. On September 5, 2012 and October 15, 2012, Wells Fargo filed separate Notices of Post-Petition Mortgage Fees, Expenses, and Charges related to the Homestead Property regarding

two property inspection fees of $15.00 each, incurred on March 28, 2012 and April 25, 2012, respectively. True and correct copies of the notices are attached hereto as composite **Exhibit 9**.

63.      However, during Plaintiff's first bankruptcy case, Wells Fargo assessed numerous, unauthorized attorneys' fees and expenses to the Homestead Loan, which Wells Fargo never disclosed pursuant to Fed. R. Bank. P. 2016 or 3002.1.  *See* **Exhibit 5**.

64.      On October 7, 2013, Wells Fargo filed amended Claim No. 18-3, reducing the pre-petition arrearage amount to $45,300.99 and indicating an escrow advance of $14,724.58.  *See* Claims Register in 2010 BK, Claim No. 18-3.

65.      Instead of recalculating its entire claim based on the corrected escrow advance amount listed in Claim No. 18-3, Wells Fargo simply used the total amount of prepetition fees, expenses, and charges included in Claim No. 18-2 and subtracted $325.00 as a credit due to borrower. *Id.*

66.      Wells Fargo's misapplication of payments continued.  On March 17, 2014 and April 21, 2014, Plaintiff made two direct payments of $1,672.00 each to Wells Fargo for post-petition amounts due under the Homestead Loan.  The March 17, 2014 payments consisted of four MoneyGram money orders, numbered R105851119715, R105851119737, R105851119726, and R105851119748, totaling $1,672.00.  The April 21, 2014 payments consisted of four MoneyGram money orders, numbered R105492261303, R105492261292, R105492261281, and R105492261270, to Wells Fargo, totaling $1,672.00.  App. 1 at line 47-48.  *See also* **Exhibit 4**.

67.      Wells Fargo applied Plaintiff's entire March 17 and April 21, 2014 payments of $1,672.00 each to the Justice Loan.  App. 1 at line 47-48.  *See also* **Exhibit 5** and **6**.

*Wells Fargo increases escrow payments and misapplies more payments.*

68.     On March 26, 2014, Wells Fargo filed a Notice of Mortgage Payment Change for the Homestead Property notifying Plaintiff that her "[c]urrent escrow payment" of $407.23 would increase to $761.34 on May 1, 2014, with a new total monthly payment of $2,025.48. A true and correct copy of the March 26, 2014 Notice is attached hereto and included in composite **Exhibit 8**.

69.     The "Current escrow payment" listed in the March 26, 2014 Notice of Mortgage Payment Change for the Homestead Property implies that the escrow increase reflected in Wells Fargo's March 23, 2012 Notice of Mortgage Payment Change did not exist. Additionally, the escrow statement attached indicates that Wells Fargo anticipated a monthly escrow payment of $730.42 for the year prior to the statement, which is higher than the $407.23 "current escrow payment" stated on the notice. The escrow statement also indicates that the amounts applied to escrow during the prior year varied dramatically.

70.     Plaintiff increased her monthly mortgage payment and made payments to Wells Fargo in the amount of at least $2,025.48 in June 2014 and subsequent months. App. 1 at line 50. *See also* **Exhibit 4**.

71.     On August 26, 2014 and September 30, 2014, Plaintiff made two direct payments of $2,030.00 each to Wells Fargo for post-petition amounts due under the Homestead Loan. The August 25, 2014 payments consisted of four MoneyGram and one Western Union money orders, numbered R105492272094, R105492272061, R105492272072, R105492272083, and 1705478963, totaling $2,030.00. The September 30, 2014 payments consisted of three USPS money orders,

numbered 22276357244, 22276357233, and 22294357222, totaling $2,030.00. App. 1 at line 52-53. *See also* **Exhibit 4**.

72. Wells Fargo applied Plaintiff's entire August 26 and September 30, 2014 payments of $2,030.00 each to the Justice Loan. App. 1 at line 52-53. *See also* **Exhibits 5** and **6**.

73. On December 23, 2014, Plaintiff made a direct payment of $2,030.00 to Wells Fargo for post-petition amounts due under the Homestead Loan. The December 23, 2014 payments consisted of three USPS money orders, numbered 22529706502, 22529706513, and 22529706524, totaling $2,030.00. App. 1 at line 56. *See also* **Exhibit 4**.

74. Wells Fargo applied Plaintiff's December 23, 2014 payment by splitting it as follows: $1,030.00 to the Justice Loan and $1,000.00 to the Homestead Loan. App. 1 at line 56. *See also* **Exhibits 5** and **6**.

75. On February 17, 2015, Plaintiff made a direct payment of $2,030.00 to Wells Fargo for post-petition amounts due under the Homestead Loan. The February 17, 2015 payments consisted of three USPS money orders, numbered 22529722116, 22529722127, and 22529722138, totaling $2,030.00. App. 1 at line 58. *See also* **Exhibit 4**.

76. Wells Fargo misapplied Plaintiff's entire February 17, 2015 payment of $2,030.00 to the Justice Property loan. App. 1 at line 58. *See also* **Exhibits 5** and **6**.

***Wells Fargo increases escrow payments and misapplies more payments…again.***

77. On March 5, 2015, Wells Fargo filed a Notice of Mortgage Payment Change regarding the Homestead Property indicating that Plaintiff's escrow payment would increase from $761.34 to $832.90 on April 1, 2015, with a new total monthly payment of $2,097.04. A true and correct copy of the March 5, 2015 Notice is attached hereto and included in composite **Exhibit 8**.

78.     Plaintiff increased her monthly mortgage payment with respect to the Homestead Property and made payments to Wells Fargo in the amount of at least $2,098.00 starting in April 2015.  App. 1 at line 60.  *See also* **Exhibit 4**.

79.     On April 6, 2015, Plaintiff made a direct payment of $2,100.00 to Wells Fargo for post-petition amounts due under the Homestead Loan.  The April 6, 2015 payments consisted of three MoneyGram and one Western Union money orders, numbered R206082123368, R206082123357, R206082123346, and 17206526175, totaling $2,100.00.  App. 1 at line 60.  *See also* **Exhibit 4**.

80.     Wells Fargo applied Plaintiff's April 6, 2015 payments by splitting them as follows: $1,090.00 to the Homestead Loan and $1,010.00 to the Justice Loan.  App. 1 at line 60.  *See also* **Exhibits 5** and **6**.

81.     On May 4, 2015, Plaintiff made a direct payment of $2,098.00 to Wells Fargo for post-petition amounts due under the Homestead Loan.  The May 4, 2015 payments consisted of three USPS money orders, numbered 22529739936, 22529739947, and 22529739958, totaling $2,098.00.  App. 1 at line 61.  *See also* **Exhibit 4**.

82.     Wells Fargo applied Plaintiff's entire May 4, 2015 payment of $2,098.00 to the Justice Loan.  App. 1 at line 61.  *See also* **Exhibits 5** and **6**.

***Plaintiff amends plan to pay remaining arrearage direct; Wells Fargo misapplies more payments.***

83.     On May 14, 2015, after Plaintiff completed all payments due under her Chapter 13 plan, the Trustee filed a motion to dismiss the case because Plaintiff's plan was insufficient to satisfy all allowed claims following the late allowance of Wells Fargo's increased arrearage amount after the TRCC was approved.  *See* 2010 BK Docket No. 74.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                               **PAGE 20**

84. In response, Plaintiff modified her Chapter 13 plan to change the treatment of the remaining $9,261.53 due to Wells Fargo as "Pay Direct." *See* 2010 BK Docket Nos. 75 and 78.

85. On July 21, 2015, Plaintiff made a direct payment of $2,098.00 to Wells Fargo for post-petition amounts due under the Homestead Loan. The July 21, 2015 payments consisted of three USPS money orders, numbered 23036511532, 23036511521, and 23036511543, totaling $2,098.00. App. 1 at line 63. *See also* **Exhibit 4**.

86. Wells Fargo misapplied Plaintiff's entire July 21, 2015 payment of $2,098.00 to the Justice Loan. App. 1 at line 63. *See also* **Exhibits 5** and **6**.

87. Wells Fargo's records also reflect disbursements of $5,984.00 and $508.14 to Plaintiff's Homestead Loan on July 18, 2015. *See* Exhibit 5. It appears that these disbursements originated from unapplied funds, and Defendant ultimately applied these funds towards Ms. White's escrow account.

88. Plaintiff's modified Chapter 13 Plan was approved by order entered on July 23, 2015. *See* 2010 BK Docket No. 78.

***Wells Fargo demands $60,000 after Plaintiff receives discharge in her first bankruptcy.***

89. Plaintiff's discharge order was entered on October 1, 2015. *See* 2010 BK Docket No. 82.

90. Wells Fargo received notice of the order approving same and the discharge order through its counsel, who made an appearance in this case. See 2010 BK Docket Nos. 79 and 83.

91. Thus, Plaintiff paid her entire pre-petition deficiency of $36,039.46 through her plan, as paid forwarded to Wells Fargo by the Chapter 13 Trustee, with the Court having approved Plaintiff's plan amendment to pay the remaining $9,261.53 outside of her plan. Thus, Wells Fargo

was required to, but did not, adjust its accounting records to show that the only portion of Plaintiff's pre-petition arrearage to be paid was the $9,261.53.[5] *See* 2010 BK Docket No. 84.

92. Because Wells Fargo did not adjust the account correctly pursuant to bankruptcy law, within two months of Plaintiff's discharge, Wells Fargo began demanding approximately $60,000.00 from Plaintiff related to the Homestead Property.[6]

93. Meanwhile, Defendant Wells Fargo kept misapplying Plaintiff's payments. On November 9, 2015, Plaintiff made payments to Wells Fargo totaling $2,600.00 under the Homestead Loan. The November 9, 2015 payments consisted of three USPS money orders, numbered 23289908578, 23289908567, and 23289908556, totaling $2,600.00. App. 1 at line 67. *See also* **Exhibit 4**.

94. Upon information and belief, Defendant failed to apply Plaintiff's November 9, 2015 payments to either of her loan accounts. App. 1 at line 67. *See also* **Exhibits 5** and **6**.

95. On December 2, 2015, Plaintiff made payments to Wells Fargo totaling $2,600.00 under the Homestead Loan. The November 9, 2015 payments consisted of three USPS money orders numbered 23289915306, 23289915317, and 23289915328 totaling $2,600.00. App. 1 at line 68. *See also* **Exhibit 4**.

96. Defendant misapplied Plaintiff's December 2, 2015 payments of $2,600.00 to the Justice Loan. App. 1 at line 68. *See also* **Exhibit 5** and **6**.

---

[5] Meanwhile, Wells Fargo sent an escrow account disclosure statement and notice of new payment as to the Homestead Property to Mr. El-Amin, dated September 10, 2015, which stated a principal balance of $185,698.56, an escrow overage amount of $9,406.51, and a new payment amount of $2,083.04. **Exhibit 10**.

[6] Wells Fargo communicated this demand to Plaintiff in a telephone call during this time period.

97.     During a December 2015 telephone call, Wells Fargo further represented to Plaintiff that it had received no payments related to the Homestead Property since 2013. This representation was not true, because Plaintiff had made numerous payments during this time period, as shown in Appendix 1.

***Plaintiff files second bankruptcy case to avoid foreclosure.***

98.     Plaintiff received a letter from Buckley Madole, P.C., dated December 14, 2015, providing notice of a January 5, 2016 foreclosure date related to the Homestead Property.  A true and correct copy of the December 14, 2015 letter is attached hereto as **Exhibit 11**.

99.     On December 31, 2015, Plaintiff filed her current Chapter 13 bankruptcy, Case No. 15-35164, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Current Bankruptcy"), to again prevent the foreclosure of her Homestead Property.[7]

100.     Plaintiff again included a debt to Wells Fargo related to the Homestead Property in her schedules, as well as the remaining arrearage balance on the Homestead Property to be paid through her new Chapter 13 plan.  *See* Current BK Docket Nos. 1 and 2.  The arrearage on the Homestead Property was to be paid by the Chapter 13 Trustee.  *See* Current BK Docket No. 2. The Debtor stated in her plan that she would pay the ongoing monthly mortgage payments on both the Homestead Property and the Justice Property directly.  *See id*.

101.     The Debtor also listed prepetition property taxes in her schedules, and her plan stated that she would pay those taxes directly.  *See* Current BK Docket Nos. 1 and 2.

---

[7] Documents filed in Plaintiff's Current Bankruptcy will be cited to as "Current BK Docket No. x."

102.    The Court issued notice of the Current Bankruptcy and meeting of creditors to Wells Fargo on January 7, 2016. *See* Current BK Docket No. 6.

103.    On or around January 21, 2016, Plaintiff received a refund of $10,666.42 from the Dallas County Tax Appraisal District for overpayment of property taxes related to the Homestead Property for tax years 2010-2015. A true and correct copy of Payment Information from the Dallas County Tax Assessor/Collector as of March 9, 2018 is attached hereto as **Exhibit 12**.

104.    Plaintiff initially was unaware that Defendant Wells Fargo had established an escrow account for the Homestead Loan and was paying taxes on her behalf, and she continued to pay certain tax payments from 2010 to 2015. On information and belief, the January 21, 2016 refund was the result of her direct payments.

*Wells Fargo objects to confirmation, disputing debt amounts.*

105.    On January 28, 2016, before the period to file proofs of claim expired, Wells Fargo filed an objection to confirmation of Plaintiff's Chapter 13 plan in the Current Bankruptcy relating specifically to the Homestead Property, which Wells Fargo alleged included a "total debt due and owing to WF as of the date of filing" of $235,596.08, with a pre-petition arrearage of approximately $60,218.30. *See* Current BK Docket No. 7.

106.    On February 25, 2016, Wells Fargo's counsel and Plaintiff's bankruptcy counsel entered a letter agreement passing Wells Fargo's objection to confirmation of Plaintiff's Chapter 13 plan to the TRCC stage for resolution regarding the treatment of Wells Fargo's claim related to the Homestead Property. A true and correct copy of the letter agreement is attached hereto as **Exhibit 13**.

*New plan confirmed, but Wells Fargo misapplies more payments.*

107.    Wells Fargo, however, continued to misapply Plaintiff's payments during the Current Bankruptcy.  On February 26, 2016, Plaintiff made a payment of $2,083.04 on the Homestead Loan via cashier's check, numbered 0671701808.  App. 1 at line 70.  *See also* **Exhibit 4**.

108.    According to Wells Fargo's records, Wells Fargo misapplied Plaintiff's February 26, 2016 payment of $2,083.04 to the Justice Loan.  App. 1 at line 70.  *See also* **Exhibits 5** and **6**.

109.    Plaintiff's Chapter 13 plan in the Current Bankruptcy was confirmed on March 10, 2016, including a provision reflecting the agreement between Wells Fargo and Plaintiff to pass Wells Fargo's objection to TRCC.  *See* Current BK Docket No. 15.

110.    On April 28, 2016, Wells Fargo filed Proof of Claim 3-1 related to the Justice Property.  *See* Claims Register in Current BK, Claim No. 3-1.

111.    Wells Fargo *did not* file a proof of claim for the Homestead Property in Plaintiff's Current Bankruptcy.

112.    Wells Fargo continued to misapply Plaintiff's payments.  On May 2, 2016, Plaintiff made a payment of $2,083.04 on the Homestead Loan via cashier's check, numbered 0671701903.  App. 1 at line 72.  *See also* **Exhibit 4**.

113.    Upon information and belief, Wells Fargo never applied Plaintiff's May 2, 2016 payment to either of her property loans.  App. 1 at line 72.  *See also* **Exhibits 5** and **6**.

114.    On June 22, 2016, Plaintiff made a payment of $2,083.62 on the Homestead Loan via cashier's check, numbered 0694101726.  App. 1 at line 75.  *See also* **Exhibit 4**.

115.     Wells Fargo misapplied Plaintiff's June 22, 2016 payment of $2,083.62 to the Justice Loan.  App. 1 at line 75.  *See also* **Exhibits 5** and **6**.

***Wells Fargo fails to object to TRCC, arrearage claim disallowed.***

116.     The Chapter 13 Trustee filed his TRCC in the Current Bankruptcy on July 11, 2016, recommending disallowance of Wells Fargo's Homestead Property claim based on Wells Fargo's failure to file a proof of claim related to the Homestead Property.  *See* Current BK Docket No. 17.

117.     Wells Fargo failed to object to the treatment of the Homestead Property arrearage in the TRCC.

118.     The Court entered an Order approving the TRCC in the Current Bankruptcy on October 17, 2016 disallowing Wells Fargo's alleged arrearage balance related to the Homestead Property.  *See* Current BK Docket No. 19.

119.     Although Wells Fargo's Homestead Property deficiency claim is not treated in the Current Bankruptcy, because Wells Fargo failed to file a proof of claim for it, Wells Fargo has continued to participate in the Current Bankruptcy with respect to the Homestead Property by filing Notices of Mortgage Payment Change ("PCN") on June 23, 2016, August 15, 2016, August 31, 2017, and April 3, 2018.  *See* **Exhibit 8**.   Nevertheless, the PCNs were mostly incorrect and/or sought illegal amounts due based on incorrect payment of pre-petition taxes, in violation of the plan, similar incorrect escrow calculations, failure to file timely PCNs, and the illegal filing of one PCN for a bogus "Payment change resulting from an approved trial modification agreement"

when in fact no modification agreement had been approved or even disclosed to the Debtor, her counsel or the Court. *See* June 16, 2016 PCN.[8]

***Plaintiff attempts to obtain information and resolve issues via RESPA correspondence.***

120.    Plaintiff and her counsel sought to obtain information with respect to her mortgage accounts and resolve her disputes with Wells Fargo concerning the Homestead Property by sending correspondence pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013)(codified at 12 C.F. R. p. 1024).   This correspondence, which includes various Requests for Information ("RFI") and Notices of Error ("NOE"), are outlined in chart form below, together with any responses by Defendant.

121.    Plaintiff's counsel sent Wells Fargo a RFI dated October 28, 2016.  A summary of Plaintiff's October 28, 2016 RFI and Defendant's responses thereto are set forth as follows:

---

[8]  These type of PCNs for hidden, unwanted and unapproved modifications were the subject of a nationwide class action filed in the United States Bankruptcy Court in the Western District of North Carolina. *Cotton v. Wells Fargo Bank, N.A. et al.*, Adversary No. 17-03056. That case ultimately was settled. Ms. White opted out of that settlement.

**PLAINTIFF'S ORIGINAL COMPLAINT** **PAGE 27**

| Date | Sender | Type of Document | Content of Request/Notice or Response |
|------|--------|-----------------|----------------------------------------|
| October 28, 2016 | Plaintiff (Special Counsel) | Request for Information | Request for an exact copy of the life of loan transaction history and copies of all escrow analysis statements prepared for the Homestead Property loan and included authorization for release of records to Plaintiff's special counsel signed by Ms. White. **Exhibit 14**. |
| November 8, 2016 | Wells Fargo - signed by Wells Fargo representative Anthony Byrd Jr. | Response to Request for Information | Wells Fargo sent a reply to Plaintiff's bankruptcy counsel, Weldon Reed Allmand of Allmand Law (and not Plaintiff's special counsel who submitted the RFI), enclosing a spreadsheet-format account history, the last escrow analysis, loan validation and ownership information, and loan origination documents for Plaintiff's Justice Property, and not Homestead Property as requested in the RFI. **Exhibit 15**. Response included statement addressed to Plaintiff's special counsel indicating that it did not have written authorization to share account information with special counsel, despite authorization provided with Plaintiff's October 28, 2016 RFI. Wells Fargo did not send a copy of this letter to Plaintiff's special counsel. *Id.* |

122. True and correct copies of Plaintiff's October 28, 2016 RFI and Wells Fargo's November 8, 2016 response to Plaintiff's RFI described in the preceding chart are attached hereto as **Exhibits 14** and **15,** respectively.

123. On information and belief, Wells Fargo did not send Plaintiff's special counsel or bankruptcy counsel an acknowledgement of receipt of the October 28, 2016 RFI.

124. Plaintiff's counsel sent Wells Fargo a NOE and RFI dated December 30, 2016 and a NOE dated January 5, 2017. A summary of Plaintiff's December 30, 2016 NOE and RFI, January 5, 2017 NOE and Defendant's responses thereto are set forth as follows:

| Date | Sender | Type of Document | Content of Request/Notice or Response |
|------|--------|------------------|----------------------------------------|
| December 30, 2016 | Plaintiff (Special Counsel) | Notice of Error | Plaintiff's counsel sent a NOE to Wells Fargo regarding its failure to properly respond to Plaintiff's October 28, 2016 RFI regarding the Homestead Property. **Exhibit 16.** Also Included a demand that Wells Fargo honor Plaintiff's signed authorization for release of records and provide the information requesting in Plaintiff's October 28, 2016 RFI. |
| December 30, 2016 | Plaintiff (Special Counsel) | Request for Information | Requested itemized payoff and reinstatement statements for the Homestead Property, enclosed Plaintiff's signed authorization for release of records. **Exhibit 17.** |
| January 4, 2017 | Wells Fargo - signed by Wells Fargo representative Leesa Whitt-Potter | Acknowledgment | Acknowledgment letter indicating an anticipated response date of January 19, 2017. **Exhibit 18.** The letter did not specify which correspondence Wells Fargo acknowledged. |
| January 5, 2017 | Wells Fargo - faxed by Wells Fargo representative Benjamin L. Van Vark | Response to Notice of Error | Response to December 30, 2016 NOE, sent via facsimile, claiming Wells Fargo was unable to confirm Plaintiff as an active borrower and was unable to match the loan number and property address with a loan on record. **Exhibit 19.** Also indicated that it incorrectly associated the request with the Justice Property and not the Homestead Property, as requested. |
| January 5, 2017 | Plaintiff (Special Counsel) | Notice of Error | Plaintiff's counsel sent a NOE regarding Wells Fargo's refusal to provide information after receiving the authorization for release of records signed by Plaintiff. **Exhibit 20.** Attached a copy of an authorization for release of records signed by Mr. El-Amin and demanded that Wells Fargo respond to her December 30, 2016 RFI. |
| January 11, 2017 | Wells Fargo | Response to Request for Information | Sent via facsimile, this time including a payoff statement for the Justice Property, rather for the Homestead Property, as requested in Plaintiff's December 30, 2016 RFI. **Exhibit 21.** |

| January 18, 2017 | Wells Fargo - signed by Wells Fargo representative Mary Kemp | Response to Request for Information | Second letter by Wells Fargo in response to Plaintiff's December 30, 2016 RFI, again referring to the Justice Property, rather than the Homestead Property. **Exhibit 22.** The letter indicated that a request for payoff statement was forthcoming and that a reinstatement quote could not be provided due to the status of the account. |
|---|---|---|---|
| January 25, 2017 | Wells Fargo - signed by Wells Fargo representative Jason Saeedi | Response to Notice of Error and Request for Information | Wells Fargo sent its first response relating to the Homestead Property to Plaintiff's bankruptcy counsel rather than to Plaintiff's special counsel as requested and authorized. **Exhibit 23.** |

125.     True and correct copies of Plaintiff's December 30, 2016 and January 5, 2017 NOEs, Plaintiff's December 30, 2016 RFI, Defendant's January 4, 2017 acknowledgment letter, Defendant's January 5, 2017, January 11, 2017, January 18, 2017, and January 25, 2017 responses to Plaintiff's NOE and RFI described in the preceding chart are attached hereto as **Exhibits 16**, **17**, **18**, **19**, **20**, **21**, **22**, and **23**, respectively.

126.     The January 25, 2017 response attached a payoff statement dated January 12, 2017 as to the Homestead Property.  In the January 25, 2017 letter, Wells Fargo claimed that it had already provided the January 12, 2017 payoff statement in response to Plaintiff's RFI received January 4, 2017.  However, Wells Fargo had only sent a payoff statement dated January 11, 2017, which related to the Justice Property.

127.     Wells Fargo further stated that it had not received consent to speak with Plaintiff's special counsel regarding the loan, even after Plaintiff's special counsel sent no less than four signed authorizations for release of records prior to January 25, 2017.  **Exhibits 14**, **16**, **17**, and **20**, respectively.

128.    Wells Fargo's violations of RESPA with respect to its responses and failures to respond caused Plaintiff to incur incidental damages and nominal damages, as well as time speaking with or meeting with her attorneys, and specifically caused her attorneys' fees and costs as her attorneys attempted to obtain information Wells Fargo failed to provide. Wells Fargo also had a duty to investigate and correct Ms. White's accounts on both the Homestead Property and the Justice Property, yet never did, in violation of RESPA. Wells Fargo's failure to correct Ms. White's accounts caused numerous damages, including the accruing of additional interest, and further attorneys' fees and costs.

129.    Wells Fargo finally sent transaction history information for the Homestead Property directly to Plaintiff, rather than through counsel, on or around March 22, 2017, including a Customer Account Activity Statement purporting to cover transactions from February 3, 2017 through March 22, 2017 and Loan History Y-T-D for years 2008 through 2016. **Exhibit 7**.

130.    Plaintiff's counsel sent Wells Fargo a NOE dated May 25, 2017 and a RFI dated May 26, 2017. A summary of Plaintiff's May 25, 2017 NOE, May 26, 2017 RFI and Defendant's responses thereto are set forth as follows:

| Date | Sender | Type of Document | Content of Request/Notice or Response |
|---|---|---|---|
| May 25, 2017 | Plaintiff (Special Counsel) | Notice of Error | Plaintiff's counsel sent a NOE addressing issues with Wells Fargo's responses to Plaintiff's prior RESPA requests. **Exhibit 24.** Plaintiff demanded that Wells Fargo honor the authorization for release of records signed by both Plaintiff and Mr. Al-Emin, respond to the October 28, 2016 RFI, respond to the December 30, 2016 RFI, respond to the December 30, 2016 NOE, and respond to the January 5, 2017 NOE. |
| May 26, 2017 | Plaintiff (Special Counsel) | Request for Information | Plaintiff sent a request for an explanation for Wells Fargo's failure to file a proof of claim in her Current Bankruptcy. **Exhibit 25.** |
| May 30, 2017 | Wells Fargo - signed by Wells Fargo representative Leesa Whitt-Potter | Acknowledgment | Wells Fargo acknowledged receipt of Plaintiff's May 25, 2017 NOE. **Exhibit 26.** |
| June 5, 2017 | Wells Fargo - signed by Wells Fargo representative Leesa Whitt-Potter | Acknowledgment | Wells Fargo acknowledged receipt of Plaintiff's May 26, 2017 RFI. **Exhibit 27.** |
| June 8, 2017 | Wells Fargo - signed by Wells Fargo representative William Cordray | Response to Notice of Error and Request for Information – Extension | Wells Fargo partially responded to Plaintiff's May 25, 2017 NOE and May 26, 2017 RFI. **Exhibit 28.** Wells Fargo acknowledged that a mistake was made in sending a payoff quote for the Justice Property and provided an anticipated response of June 13, 2017 regarding Plaintiff's other requests. |
| June 9, 2017 | Wells Fargo - faxed by Wells Fargo representative Kandee Wight | Response to Notice of Error | Wells Fargo sent a payoff quote for Ms. White's Homestead Property to Plaintiff's special counsel via facsimile including a total payoff amount of $239,311.56 through July 7, 2017. **Exhibit 29.** |

| June 12, 2017 | Wells Fargo | Response to Notice of Error | Wells Fargo sent an identical payoff quote for Ms. White's Homestead Property to Plaintiff's special counsel via facsimile including a total payoff amount of $239,311.56 through July 7, 2017. **Exhibit 30**. |
|---|---|---|---|
| June 13, 2017 | Wells Fargo - signed by Wells Fargo representative William Cordray | Response to Notice of Error and Request for Information – Extension | Wells Fargo sent a letter extending its anticipated response date to Plaintiff's outstanding requests to June 27, 2017. **Exhibit 28**. Wells Fargo sent several more letters extending its anticipated response date, ultimately granting itself eight extensions and extending its anticipated response date to **August 30, 2017.** *Id.* |
| July 6, 2017 | Wells Fargo - signed by Wells Fargo representative Kandee Wight | Response to Notice of Error | Wells Fargo provided a reinstatement quote for the Homestead Property via facsimile with a total reinstatement amount of $67,669.68, consisting of 33 alleged past-due payments totaling $68,211.48, $505.68 in unpaid late charges, $285 in corporate advances, less $1,332.48 in unapplied funds. **Exhibit 31.** |
| August 10, 2017 | Plaintiff (Special Counsel) | Notice of Error | Plaintiff's counsel sent a NOE regarding Wells Fargo's insufficient responses to Plaintiff's May 25, 2017 NOE and May 26, 2017 RFI, again demanding that Wells Fargo properly respond to Plaintiff's multiple RESPA letters. **Exhibit 32.** |

131.    True and correct copies of Plaintiff's May 25, 2017 NOE, Plaintiff's May 26, 2017 RFI, Defendants' May 30, 2017 and June 5, 2017 acknowledgment letters, Defendants June 8, 2017, June 9, 2017, June 12, 2017, June 13, 2017, and July 6, 2017 responses to Plaintiff's NOE and RFI, and Plaintiff's August 10, 2017 NOE described in the preceding chart are attached hereto as **Exhibits 24**, **25, 26, 27, 28, 29, 30, 31** and **32**, respectively.

132.    Wells Fargo finally responded to Plaintiff's May 2017 correspondence and previous requests in a letter dated August 25, 2017, almost ten months following Plaintiff's original RFI regarding the Homestead Property. **Exhibit 33**. In its August 25, 2017 response, Wells Fargo offered the following explanations for its actions regarding Plaintiff's RESPA correspondence:

- Ms. White, who Wells Fargo asserts is not an obligor, did not have the authority to authorize a third party to receive information regarding the homestead mortgage loan account.

- Nevertheless, Wells Fargo had updated the account to reflect special counsel's authority to receive information based on Mr. El-Amin's authorization.

- Wells Fargo sent its "response" to Plaintiff's October 28, 2016 RFI to Allmand Law instead of Plaintiff's special counsel because it did not have authorization to send information to special counsel, despite the signed authorization provided by Plaintiff. *Id.* Wells Fargo also admitted that it sent documents for the Justice Property, rather than the requested information for the Homestead Property, but still asserted that "the account was handled appropriately."

- With regard to Plaintiff's December 30, 2016 RFI, Wells Fargo further admitted that it erred in responding to Plaintiff's December 30, 2017 RFI by sending a payoff quote for the Justice Property, rather than Ms. White's Homestead Property. *Id.* Wells Fargo promised to provide a payoff quote for the Homestead Property within 5-7 business days, but stated it was unable to provide a reinstatement quote due to the active bankruptcy.

- Regarding Plaintiff's January 5, 2017 RFI, Wells Fargo admitted that it did not send the requested documents to Plaintiff and stated it would send the payoff quote for the Homestead Property within 5-7 business days, but again claimed it was unable to prove a reinstatement quote due to the active bankruptcy.

- Regarding Plaintiff's May 26, 2017 RFI, Wells Fargo stated that it did not file a proof of claim in Plaintiff's Current Bankruptcy because Plaintiff was "a third party that did not sign the Note" who was "not obligated to make the monthly payments."

- Wells Fargo also provided Ms. White with escrow statements for her Homestead Property, as well as a transaction history spreadsheet.

133. Plaintiff's counsel sent Wells Fargo RFIs dated August 23, 2017 and August 25, 2017. A summary of Plaintiff's August 23, 2017 RFI, the August 25, 2017 RFI and Defendant Wells Fargo's responses thereto are set forth as follows:

| Date | Sender | Type of Document | Content of Request/Notice or Response |
|---|---|---|---|
| August 23, 2017 | Plaintiff (Special Counsel) | Request for Information | Plaintiff's counsel sent a RFI for the Homestead Property, requesting an exact reproduction of the life of loan mortgage transaction history from the servicer's system of record, exact reproductions of every escrow analysis statement prepared for the loan, all P309 screens and nesting screens from the servicer's system of record, and all NOTS screens from the servicer's system of record. **Exhibit 34.** |
| August 25, 2017 | Plaintiff (Special Counsel) | Request for Information | Plaintiff's counsel sent a RFI seeking information related to the Justice Property, including an exact reproduction of the life of loan mortgage transaction history from the servicer's system of record, exact reproductions of every escrow analysis statement prepared for the loan, all P309 screens and nesting screens from the servicer's system of record, and all NOTS screens from the servicer's system of record. **Exhibit 35.** |
| August 28, 2017 | Wells Fargo - signed by Wells Fargo representative Leesa Whitt-Potter | Acknowledgment | Wells Fargo acknowledged receipt of Plaintiff's August 25, 2017 RFI regarding the Justice Property, providing an estimated response date of September 12, 2017. **Exhibit 36.** |
| September 7, 2017 | Plaintiff (Special Counsel) | Request for Information | Plaintiff's counsel sent a RFI to Wells Fargo regarding Wells Fargo's August 31, 2017 Notice of Mortgage Payment change requesting an explanation regarding the $27,520.50 "estimated" escrow deposit. **Exhibit 37.** |
| September 12, 2017 | Wells Fargo - signed by Wells Fargo representative Jeff Mosca | Response to Request for Information – Extension | Wells Fargo extended its deadline to respond to Plaintiff's August 23, 2017 RFI to September 26, 2017. **Exhibit 38.**[9] |

---

[9] Plaintiff believes this letter was in response to Plaintiff's August 23, 2017 RFI, based on the dates provided and despite Wells Fargo's refusal to respond as stated in its September 12, 2017 letter. *Id.*

| September 15, 2017 | Wells Fargo - signed by Wells Fargo representative Jeff Mosca | Response to Request for Information | Wells Fargo responded that its "customer" filed bankruptcy on December 31, 2015, despite referring to the account as belonging to Mr. El-Amin, who did not file bankruptcy. **Exhibit 40.** Wells Fargo further stated that the account was due for the January 1, 2015 through September 1, 2017 payments and that it paid $20,554.09 toward property taxes and homeowner's insurance. *Id.* Wells Fargo continued to explain its position that screen prints from its system of record were "confidential, privileged, and/or proprietary information." *Id.* Further, the response included unrequested loan origination documents and another transaction history in a spreadsheet format, created specifically for responding to the RESPA letter, rather than documents kept in the ordinary course of business from its servicing system of record, which is MSP. *Id.* |

134. True and correct copies of Plaintiff's August 23, 2017 RFI, Plaintiff's August 25, 2017 RFI, Defendants August 28, 2017 acknowledgement letter, and September 7, 2017, September 12, 2017 and September 15, 2017 responses to Plaintiff's RFI described in the preceding chart are attached hereto as **Exhibits 34**, **35**, **36**, **37**, **38**, and **39**, respectively.

135. Wells Fargo also sent a letter, signed by Wells Fargo representative Jeff Mosca, dated September 7, 2017 to Plaintiff responding to the "inquiry received August 28, 2017" regarding Mr. El-Amin's mortgage account. In its September 7, 2017 letter, Wells Fargo provided investor information and identified Fannie Mae as the investor, which was not requested, and stated that it was unable to respond to Plaintiff's requests because they sought "privileged, confidential, and/or proprietary information" and were too broad. **Exhibit 39**.

136. On August 31, 2017, Wells Fargo filed a Notice of Payment Change in Plaintiff's Current Bankruptcy which reflected a new monthly payment of $1,968.18, effective November 1,

2017. **Exhibit 8**, p. 40-45. In the attached escrow analysis, Wells Fargo showed an "estimated" deposit to escrow of $27,520.50. *Id.*

137. Upon information and belief, Wells Fargo never responded to Plaintiff's September 7, 2017 RFI.

138. Plaintiff's counsel sent Wells Fargo a NOE dated October 3, 2017. A summary of Plaintiff's October 3, 2017 NOE and Defendant's responses thereto are set forth as follows:

| Date | Sender | Type of Document | Content of Request/Notice or Response |
|---|---|---|---|
| October 3, 2017 | Plaintiff (Special Counsel) | Notice of Error | NOE explaining that the requested information is not inherently confidential or proprietary and demanding that Wells Fargo provide the information requested in Plaintiff's August 23, 2017 RFI. **Exhibit 41.** |
| October 9, 2017 | Wells Fargo - faxed by Wells Fargo representative Leesa Whitt-Potter | Acknowledgment | Wells Fargo acknowledged receipt of Plaintiff's NOE, providing an estimate response date of October 23, 2017. **Exhibit 42.** |
| October 17, 2017 | Wells Fargo - signed by Wells Fargo representative Kathryn Udrovich | Response to Notice of Error | Response attached a copy of Wells Fargo's September 15, 2017 response without addressing the additional issues raised in the October 3, 2017 NOE. **Exhibit 43.** Response also stated that Wells Fargo had updated its records to show special counsel as the attorney representing Plaintiff and Mr. El-Amin, and as such, it would start sending standard account information to special counsel.[10] *Id.* |
| October 23, 2017 | Wells Fargo - signed by Wells Fargo representative Kathryn Udrovich | Response to Notice of Error – extension | Wells Fargo sent a response providing a new anticipated response date of November 6, 2017, regarding Plaintiff's October 3, 2017 NOE. **Exhibit 42**, p. 2. |
| November 6, 2017 | Wells Fargo - signed by Wells Fargo representative Kathryn Udrovich | Response to Notice of Error – extension | Wells Fargo sent a response providing a new anticipated response date of November 20, 2017, regarding Plaintiff's October 3, 2017 NOE. *Id.*, p. 3. |
| November 10, 2017 | Wells Fargo - signed by Wells Fargo representative Kathryn Udrovich | Response to Notice of Error | Wells Fargo's response contained another payment history spreadsheet, rather than the requested transaction history from the servicer's system of record, containing transactions dated May 14, 2008 through September 18, 2017. **Exhibit 44.** |

139.    True and correct copies of Plaintiff's October 3, 2017 NOE, Defendants' October

9, 2017 acknowledgment letter, Defendants' October 17, 2019, October 23, 2017, November 6,

2017, and November 10, 2017 responses to Plaintiff's NOE described in the preceding chart are

attached hereto as **Exhibits 41, 42, 43,** and 44, respectively.

140.    Plaintiff's counsel sent Wells Fargo a NOE dated March 2, 2018.  A summary of

Plaintiff's March 2, 2018 NOE and Defendant's responses thereto are set forth as follows:

| Date | Sender | Type of Document | Content of Request/Notice or Response |
|------|--------|------------------|----------------------------------------|
| March 2, 2018 | Plaintiff (Special Counsel) | Notice of Error | Plaintiff's counsel sent a NOE to Wells Fargo regarding its failure to response to Plaintiff's August 25, 2017 RFI seeking information related to the Justice Property.  **Exhibit 45.** |
| March 21, 2018 | Wells Fargo - signed by Wells Fargo representative Joe Dursky | Response to Notice of Error | Wells Fargo's response stated that it previously sent an account history for the Justice Property account on September 21, 2017 and provided a plethora of unrequested information, including information about Plaintiff's bankruptcy status, the account's status regarding assistance options, bankruptcy disclaimers, account validation, and origination documents.  **Exhibit 46.**  Neither Plaintiff's bankruptcy counsel not her special counsel received any correspondence from Wells Fargo dated September 21, 2017, and Wells Fargo did not attach the alleged correspondence to its March 21, 2018 response.  *Id.* |

141.    True and correct copies of Plaintiff's March 2, 2018 NOE and Defendants' March

21, 2018 response to Plaintiff's March 2, 2018 NOE described in the preceding chart are attached

hereto as **Exhibits 45** and **46,** respectively.

---

[10] Plaintiff's counsel does not represent Mr. El-Amin: however, Plaintiff's counsel was able to obtain authorization from both Plaintiff and Mr. El-Amin, which it forwarded to Wells Fargo in correspondence dated January 5, 2017. *See* **Exhibit 20**.

142.    On information and belief, Wells Fargo failed to acknowledge receipt of Plaintiff's March 2, 2018 NOE.

143.    Wells Fargo's failure to timely and completely respond to Plaintiff's inquiries has severely delayed resolution of Plaintiff's disputes with Wells Fargo.

***Wells Fargo's payment misapplications and improper demands.***

144.    As outlined above, over the course of Plaintiff's two bankruptcy cases, Wells Fargo repeatedly misapplied amounts paid by Plaintiff and the Chapter 13 Trustee over the course of Plaintiff's bankruptcy cases. *See* Appendix 1 and **Exhibits 5** and **6.**

145.    In addition to misapplying payments, Wells Fargo has failed to properly manage the escrow account established for Plaintiff's Homestead Property, in violation of RESPA, as evidenced by Wells Fargo's Notices of Mortgage Payment Change filed and escrow analyses performed for the account since Plaintiff's first bankruptcy case was filed. *See* Appendix 2 and **Exhibit 8.**

146.    Specifically, the March 23, 2012 notice of mortgage payment change indicates that the escrow portion of Plaintiff's payment would increase to $1,551.83 beginning with the June 1, 2012 payment. **Exhibit 8.** However, the escrow statement attached to the notice of mortgage payment change indicates that Wells Fargo actually applied funds to Plaintiff's escrow accounts in varying amounts, including $407.23, $0.02, $407.25, $407.27, $0.04, and $8,551.85.

147.    Similarly, the February 22, 2013 escrow statement indicates that the previous escrow payment was $407.23 (as opposed to the $1,551.83 disclosed in the March 23, 2012 payment change notice) and that the new escrow payment would be $1,342.00 ($730.42 for the escrow payment and $611.58 for the escrow shortage). The February 22, 2013 escrow statement

also indicated that Wells Fargo applied funds in the amount of $4,213.64, $407.25, $407.23, and an estimated payment of $6,515.70 to Plaintiff's escrow account in 2012 and 2013.

148.    Wells Fargo has continued to apply various amounts to Plaintiff's escrow account that were not disclosed to the Court or did not comply with the escrow payments disclosed to the Court or in the escrow statement.

149.    As a result of Wells Fargo's failure to properly apply amounts received from the Plaintiff and the Chapter 13 Trustee, Wells Fargo is improperly demanding that Plaintiff pay a vastly over-stated arrearage in alleged past-due payments on the Homestead Property.

150.    Moreover, Wells Fargo has sent Plaintiff monthly mortgage statements that make inflated and improper demands as a result of Wells Fargo's misapplication of payments received from Plaintiff and the Chapter 13 Trustee during and in between her two bankruptcy cases.  *See supra* and **Exhibits 47** and **48**.

151.    Each of Wells Fargo's monthly mortgage statements for the Homestead Property contain inaccurate unpaid principal balances and total amounts due as a result of Wells Fargo's failure to apply and misapplication of Plaintiff's direct periodic payments during and between her two bankruptcy cases.  **Exhibit 47**.

152.    Likewise, the monthly mortgage statements for the Justice Property, dated September 18, 2017 through January 11, 2019, contain inaccurate unpaid principal balances and total amounts due as a result of Wells Fargo's application of payments made toward the Homestead Property account to the Justice Property account.  **Exhibit 48**.

*Plaintiff's damages from Wells Fargo's violation of law.*

153.     Plaintiff has suffered actual damages, including out-of-pocket damages, credit damage, attorneys' fees, and out-of-pocket expenses, and has suffered mentally and emotionally as a result of Wells Fargo's conduct described herein.

154.     Wells Fargo's failure to properly apply Plaintiff's payments made toward the Homestead Property account caused Plaintiff to file two bankruptcy cases to prevent Wells Fargo from foreclosing on her home, resulting in Plaintiff incurring Trustee payments and fees, credit damage, and an inability to obtain new credit for over eight years.

155.     Plaintiff successfully completed her first Chapter 13 plan and received her discharge, yet Wells Fargo failed to properly apply Plaintiff's plan payments and ongoing mortgage payments and denied Plaintiff her fresh start.

156.     Wells Fargo's conduct caused Plaintiff to experience overwhelming stress and anxiety.

157.     Through the years, Plaintiff has spent numerous hours with her bankruptcy and special counsel in her attempts to resolve her issues with Wells Fargo and incurred out-of-pocket expenses in the form of mileage to and from her attorneys' offices and charges for postage and printing.  Plaintiff also has incurred extensive attorneys' fees related to her two bankruptcy cases, attempts to obtain information from Wells Fargo, investigation of her claims against Wells Fargo, and this adversary proceeding.

## V. CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE PLAN AND ORDER CONFIRMING THE PLAN
### (AS TO ALL DEFENDANTS)

158.     Plaintiff repeats and realleges the allegations in this complaint.

159.     Title 11 U.S.C. § 1322(b)(5) allows a Chapter 13 debtor to cure deficiencies and maintain regular monthly mortgage payments.  Section 1327 of Title 11 of the United States Code provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

160.     Plaintiff's two confirmed Chapter 13 plans contained provisions regarding the funds received from the Chapter 13 Trustee during her Chapter 13 cases, as well as those received directly from the Plaintiff during her cases.

161.     Defendants violated Plaintiff's plans and the Orders confirming the plans by failing to apply payments pursuant to Plaintiff's Chapter 13 plans.  Specifically, Defendants failed to apply Plaintiff's payments to the correct mortgage loan account, failed to apply some of Plaintiff's payments at all, applied only partial payments, and/or applied payments to improper and undisclosed fees and expenses in violation of bankruptcy law.

162.     Because Wells Fargo's conduct described herein was performed as servicer for and agent on behalf of itself, Fannie Mae, and HSBC, Fannie Mae and HSBC are also liable for Wells Fargo's actions as servicer and agent for each of them.

163. Defendants thus violated 11 U.S.C. § 1327 and other provisions of the Code and Rules, Plaintiff's confirmed Chapter 13 plans, the orders confirming the plans, 11 U.S. C. § 541(i), and other motions, directives, and orders of the Court.

164. Title 11 U.S.C. § 105(a) of the Code grants power to the Court to remedy Defendants' violations of numerous sections of Chapter 13. Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate to facilitate implementation of Code provisions, including the granting of sanctions, the granting of monetary relief for actual and statutory damages, punitive damages, attorneys' fees and costs, and the imposition of temporary and permanent injunctions.

165. Defendants' acts in applying payments received from the Debtor and the Chapter 13 Trustee contrary to the provisions in Plaintiff's Chapter 13 plans were willful violations of the plans, the Orders confirming the plans, other orders of the Court, the provisions of Chapter 13 of the Code, and the Bankruptcy Rules. Defendants knew of the existence of these provisions, their acts were intentional, and the acts alleged herein violated the provisions and purposes of the Code set forth herein.

166. Defendants' conduct as described herein is part of a general pattern and practice of conduct by Defendants, which is either expressly authorized by, or not specifically prohibited by, their policies and procedures.

167. It is consistent with Defendants' policies and procedures to ignore the directives and orders of bankruptcy courts and the Bankruptcy Code and Rules in the manner described in this complaint.

168. Plaintiff has suffered damages due to Defendants' actions, including but not limited to mental anguish, emotional distress, actual damages, nominal and incidental damages, mileage damages, reputational damages, lost equity, damage to credit, and attorneys' fees and costs in attempting to rectify Defendants' violations.

169. Accordingly, under § 105 and/or the Court's inherent authority, Defendants Wells Fargo, Fannie Mae and HSBC should be sanctioned in an appropriate amount and made to pay Plaintiff's reasonable attorneys' fees for bringing this action.

### COUNT II
### VIOLATION OF 11 U.S.C. § 506 AND FED. R. BANKR. P. 2016
### (AS TO WELLS FARGO)

170. Plaintiff repeats and realleges the allegations in this complaint.

171. As set forth above, Wells Fargo attorneys' fees and expenses, and other expenses and charges to Plaintiff's account during the pendency of her first bankruptcy case that were never disclosed to Plaintiff or the Court, and Wells Fargo attempted to collect and did actually collect such fees (during and) after Plaintiff received her discharge. *See* **Exhibit 5**.

172. Such fees are *per se* unreasonable in that Wells Fargo wholly failed to seek the approval of the Court as required by § 506(b) of the Bankruptcy Code and Fed. R. Bankr. P. 2016(a).

173. Wells Fargo's assessment and collection of such unapproved fees and charges, whether during or after the bankruptcy proceeding, violates the Bankruptcy Code.

174. With respect to the unapproved fees collected directly from the Plaintiff, the Court can order disgorgement and other relief.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                        **PAGE 45**

175. With respect to any unapproved fees that Wells Fargo collected by applying plan or Trustee payments to such fees, rather than to the plan and deficiency payments as set forth in the plan, and the Court can order disgorgement and other relief.

176. Upon information and belief, Wells Fargo's conduct as described herein is part of a general pattern and practice of conduct by Wells Fargo, which is either expressly authorized by, or not specifically prohibited by, its policies and procedures.

177. 11 U.S.C. § 105 grants power to the Court to remedy Defendant's violations of § 506(b) of the Bankruptcy Code and Fed. R. Bankr. P. 2016(a). Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate to facilitate implementation of the Bankruptcy Code, including the granting of sanctions for contempt, injunctive relief, monetary relief for actual damages, attorneys' fees, and punitive damages.

178. Therefore, Plaintiff seeks actual damages, including disgorgement of unapproved fees and costs, sanctions and punitive damages, and payment of Plaintiff's attorneys' fees and costs for Defendant's violations of 11 U.S.C. § 506 and Fed. R. Bankr. P. 2016.

## COUNT III
## VIOLATIONS OF FED. R. BANKR. P. 3002.1
## (AS TO WELLS FARGO AND FANNIE MAE)

179. Plaintiff repeats and realleges the allegations in this complaint.

180. Fed. R. Bankr. P. 3002.1 became effective on December 1, 2011 to aid in the implementation of 11 U.S.C. § 1322(b)(5), which permits a Chapter 13 debtor to cure a default and maintain payments on a home mortgage over the course of the debtor's plan. Fed. R. Bankr. P. 3002.1, 2011 Committee Notes.

181.    Wells Fargo failed to file Rule 3002.1(b) notices of payment change during Plaintiff's first bankruptcy that would have informed Plaintiff that her monthly payment amount changed between December 1, 2011 and March 23, 2012. When Wells Fargo finally filed a PCN—on March 23, 2012—it increased Plaintiff's mortgage payment to $2,815.97, which was more than twice the amount of Plaintiff's monthly mortgage payment for the previous period.

182.    Furthermore, the Rule 3002.1 notices that Wells Fargo did file were inaccurate, filed for improper purposes, and were wholly inconsistent with the previously filed Rule 3002.1 notices.   For each PCN, the escrow statement attached thereto shows the alleged "current" monthly mortgage payment at the time the PCN was filed.  Each PCN also provides the alleged "new" monthly mortgage payment, to begin on the effective date listed.

183.    Thus, the "current" payment on the PCN immediately following the last PCN should be the exact same payment amount as the "new" payment on the previously filed PCN. Yet, as shown on Appendix 2, out of 10 PCNs filed by Wells Fargo in Ms. White's bankruptcy cases, *in only one*—the April 3, 2019 PCN—does the "current payment" match the previous PCN's "new" payment.[11]

184.    Wells Fargo's records reflect that it applied payments in amounts not disclosed to the Court in violation of Rule 3002.1(c), as described *supra*.

185.    Wells Fargo's failure to file payment change notices, and its filing of incorrect and inconsistent payment change notices in Plaintiff's bankruptcy cases has only compounded the

---

[11] Even the Motion for Relief from Stay filed by U.S. Bank on December 23, 2019, states that the "current" monthly mortgage payment is $2,051.12 and had been that amount for the last 34 payments.  *See* Current BK Docket Nos. 52 and 53.  Yet the $2,051.12 amount is inconsistent with the already internally-inconsistent PCNs filed by Wells Fargo previously.

issues surrounding Wells Fargo's misapplication of payments, which has plagued Plaintiff's mortgage loans for years and precipitated this litigation.

186. Because Wells Fargo's conduct described herein was performed as servicer for and on behalf of Fannie Mae, Fannie Mae is also liable for Wells Fargo's actions.

187. The Court should award Plaintiff actual damages and her attorneys' fees and costs for remedying Wells Fargo's failure to comply with Rule 3002.1, as well as other appropriate relief, including substantial punitive damages.

## COUNT IV
## WILLFUL VIOLATION OF THE AUTOMATIC STAY
## (AS TO ALL DEFENDANTS)

188. Plaintiff repeats and realleges the allegations in this complaint.

189. Wells Fargo's actions in this case constitute willful violations of the automatic stay as set forth in 11 U.S.C. § 362(a)(3).

190. Wells Fargo had actual knowledge that Plaintiff was a debtor in a pending Chapter 13 case and that the automatic stay was in effect at the time it took the actions described herein.

191. Wells Fargo's actions in applying Plaintiff's direct payments and those made via her Chapter 13 plan by the Chapter 13 Trustee to wrongful fees and other unauthorized amounts not disclosed to the Court violate the automatic stay under 11 U.S.C. § 362(a)(3). This includes application of payments to the Justice Property that were intended for the Homestead Property.

192. In addition, Wells Fargo violated the stay by filing a proof of claim that included an alleged pre-petition escrow shortage and subsequently collecting monthly mortgage payments which included the same alleged escrow amounts, thereby collecting twice for the same amounts in violation of 11 U.S.C. § 362(a)(3).

193.    Upon information and belief, Wells Fargo's conduct as described herein is part of a general pattern and practice of conduct by Wells Fargo, which is either expressly authorized by, or not specifically prohibited by, its policies and procedures.

194.    Wells Fargo's acts constitute willful violations of the automatic stay. Wells Fargo knew the automatic stay was applicable to Plaintiff, its actions were intentional, and the acts alleged herein violated the provisions and purposes of the Bankruptcy Code.

195.    Plaintiff has been injured by and has incurred actual damages as a result of Wells Fargo's violations of the automatic stay.

196.    Because Wells Fargo's conduct described herein was performed as servicer for and on behalf of Fannie Mae in connection with the Homestead Property and for HSBC for the Justice Property, HSBC and Fannie Mae are also liable for Wells Fargo's actions.

197.    As a result of the above violations of 11 U.S.C. § 362, and pursuant to the Bankruptcy Code, the Court's inherent powers, and its authority to enforce provisions of the Bankruptcy Code pursuant to 11 U.S.C. § 105, Defendants are liable to Plaintiff for Plaintiff's actual damages, punitive damages, and reasonable attorneys' fees and costs caused Defendants' willful stay violations. 11 U.S.C. § 362(k).

### COUNT V
### VIOLATION OF THE DISCHARGE INJUNCTION
### PURSUANT TO 11 U.S.C. § 524(i)
### (AS TO DEFENDANTS WELLS FARGO AND FANNIE MAE)

198.    Plaintiff repeats and realleges the allegations in this complaint.

199.    Wells Fargo has violated 11 U.S.C. § 524(i) by failing to properly apply funds received from the Plaintiff and the Chapter 13 Trustee in accordance with the provisions of Plaintiff's confirmed Chapter 13 plan.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                    **PAGE 49**

200. Upon information and belief, Wells Fargo's conduct as described herein is part of a general pattern and practice of conduct by Wells Fargo, which is either expressly authorized by, or not specifically prohibited by, Wells Fargo's policies and procedures.

201. Wells Fargo's acts constitute willful violations of the discharge injunction under 11 U.S.C. § 524. Wells Fargo participated in and had notice of all filings in Plaintiff's bankruptcy and knew of her intentions and treatment of her Homestead Property loan as set forth in Plaintiff's Chapter 13 plan. Wells Fargo's actions were intentional, and the acts alleged herein violated the provisions and purposes of the Bankruptcy Code.

202. Plaintiff has suffered actual damages, including attorneys' fees and out-of-pocket expenses, amongst others, and has suffered emotional distress as a result of Wells Fargo's willful violations of this Court's discharge order and the discharge injunction. Moreover, by failing to comply with the discharge injunction and demanding that Plaintiff pay over $60,000 in past-due payments, Defendants are depriving Plaintiff of equity in her Homestead Property. Finally, Wells Fargo's failure to comply with Plaintiff's discharge forced Plaintiff to file a second bankruptcy case, causing her to incur additional attorneys' fees and pay additional fees to the Chapter Trustee in connection with her second bankruptcy case.

203. Because Wells Fargo's conduct described herein was performed as servicer for and on behalf of Fannie Mae in connection with the Homestead Property, Fannie Mae is also liable for Wells Fargo's actions.

204. Title 11 U.S.C. § 105(a) of the Code grants power to the Court to remedy Defendants' violations of numerous sections of the Bankruptcy Code. Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate to facilitate implementation

of Code provisions, including the granting of sanctions for contempt, the granting of monetary relief for actual and statutory damages, punitive damages, attorneys' fees and costs, and the imposition of temporary and permanent injunctions.

205. Therefore, Plaintiff seeks actual damages, sanctions and punitive damages, and payment of Plaintiff's attorneys' fees and costs for Defendants' violations of 11 U.S.C. § 524.

## COUNT VI
### CONTEMPT
### (AS TO ALL DEFENDANTS)

206. Plaintiff repeats and realleges the allegations in this complaint.

207. As described herein, Defendants have violated and breached Plaintiff's confirmed Chapter 13 plan, the Order confirming the plan, 11 U.S.C. §§ 506 and 524(i), and Fed. R. Bankr. P. 2016 and 3002.1.

208. Defendants' actions can be remedied pursuant to this Court's inherent authority, as well as under and pursuant to 11 U.S.C. § 105(a).

209. Wells Fargo is a sophisticated creditor and mortgage servicer. Wells Fargo knows about and is legally obligated to comply with Ms. White's confirmed Chapter 13 plans, the orders confirming the plan, and the provisions and purposes of the Bankruptcy Code and Rules. There is no fair ground of doubt that the Wells Fargo's attempts to collect unlawful amounts, and related misapplication of payments, were prohibited by these orders. Yet Wells Fargo is refusing to comply with the Court's orders, Plaintiff's Chapter 13 plans, and the Bankruptcy Code and Rules.

210. Because Wells Fargo's conduct described herein was performed as servicer for and on behalf of Fannie Mae in connection with the Homestead Property and for HSBC for the Justice Property, HSBC and Fannie Mae are also liable for Wells Fargo's actions. Wells Fargo and HSBC

are liable because they took money allocated for the Homestead Loan and applied it instead to the Justice Loan.

211.    Plaintiff has been damaged by Defendants' conduct and therefore respectfully requests that this Court find Defendants in contempt, and that the Court use its inherent and statutory powers to award all appropriate relief, including but not limited to actual damages, sanctions, punitive damages, and reasonable attorneys' fees and costs.

## COUNT VII
### BREACH OF CONTRACT – HOMESTEAD PROPERTY
### (AS TO DEFENDANTS WELLS FARGO AND FANNIE MAE)

212.    Plaintiff repeats and realleges the allegations in this complaint.

213.    The Note and Deed of Trust for the Homestead Property constitute a valid contract. *See* **Exhibit 1**.

214.    Wells Fargo, as described above, acted as agent for Fannie Mae, which owned the Homestead Loan.

215.    By taking the actions described herein, Defendants have breached the Note and Deed of Trust.  Specifically, Plaintiff alleges that Defendants breached Uniform Covenants Nos. 1, 2, 3, and 16 (i.e. the payment application and other provisions) contained in the December 14, 2007 Deed of Trust related to the Homestead Property. *See* **Exhibit 1**.

216.    Wells Fargo and Fannie Mae breached these provisions of the Homestead Property Deed of Trust by misapplying payments as described *supra*, including, but not limited to, (1) applying funds to the wrong loan or not applying Plaintiff's payments at all, (2) holding payments as unapplied for extended periods of time, (3) holding funds as unapplied in excess of the amounts needed to satisfy outstanding payments due, (4) applying payments in incorrect or undisclosed

amounts, (5) improperly charging fees to the account, and (6) misapplying funds to and from the Homestead Property escrow account.

217. Plaintiff has suffered actual damages, including attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered emotional-distress damages as a result of Defendants' failure to properly apply payments received from the Plaintiff.

218. Defendants' breach, as described herein, caused Plaintiff's damages, which were natural, probable, and foreseeable consequences of Wells Fargo's and Fannie Mae's conduct.

219. As such, Wells Fargo and Fannie Mae liable to Plaintiff for damages and attorney's fees pursuant to the TEX. CIV. PRAC. & REM. CODE § 38.001.

**COUNT VIII**
**BREACH OF CONTRACT - JUSTICE PROPERTY**
**(AS TO DEFENDANTS WELLS FARGO AND HSBC)**

220. Plaintiff repeats and realleges the allegations in this complaint.

221. Plaintiff owns rental property at 470 Justice Drive, Cedar Hill, Texas 75104, which is secured by a Deed of Trust executed by Plaintiff and Mr. El-Amin on April 13, 2006. *See* **Exhibit 2**.

222. The Note and Deed of Trust for the Justice Property constitute a valid contract. *Id.*

223. Wells Fargo currently serves as servicer for HSBC Bank USA, N.A., as Trustee for WFMBS 2006-8, which owns the Justice Property loan. Wells Fargo acts as agent for HSBC.

224. Wells Fargo and HSBC are liable to Plaintiff for breach of the payment application and other provisions contained in the April 13, 2006 Deed of Trust, and specifically Uniform Covenants Nos. 1, 2, 3, and 16 contained therein. *See* **Exhibit 2**.

225. Plaintiff has suffered actual damages, including attorneys' fees, and out-of-pocket

expenses, amongst others, and has suffered emotion-distress damages as a result of Wells Fargo's breach.

226. Wells Fargo and HSBC's breach, as described herein, caused Plaintiff's damages, which were natural, probable, and foreseeable consequences of the Wells Fargo and HSBC's conduct.

227. As such, Wells Fargo and HSBC are liable to Plaintiff for damages and attorney's fees pursuant to the TEX. CIV. PRAC. & REM. CODE § 38.001.

**COUNT IX**
**VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**
**(AS TO DEFENDANT WELLS FARGO)**

228. Plaintiff repeats and realleges the allegations in this complaint.

229. In January 2013, the Consumer Financial Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

230. Specifically, on February 14, 2013, the CFPB issued the Amended Real Estate Settlement Procedures Act (Regulation X) ("RESPA"), 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013)(codified at 12 C.F. R. p. 1024). This Regulation became effective on January 10, 2014.

231. Plaintiff's Homestead mortgage loan at issue is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and is therefore subject to RESPA.

232. Wells Fargo is subject to the Regulations and does not qualify for any of the exceptions noted in the Regulations for "small servicers." Neither is Wells Fargo a "qualified

lender" as defined in 12 CFR § 617.7000.

233.    As discussed in detail above, Plaintiff and her counsel sent multiple letters to Wells Fargo attempting to obtain information crucial to understanding how Wells Fargo applied, or did not apply, payments to Plaintiff's mortgage accounts.

234.    All letters sent by Plaintiff and her counsel constitute Requests for Information under 12 C.F.R. § 1024.36 or Notices of Error under 12 C.F.R. § 1024.35.

235.    As described *supra,* Wells Fargo failed to provide Plaintiff with complete responses to each of Plaintiff's Requests for Information and Notices of Error and further failed to provide all of the information requested in each letter, particularly with regard to Plaintiff's requests for a Reinstatement Statement and complete transaction histories and servicing notes from Wells Fargo's system of record.

236.    Specifically, Wells Fargo's November 8, 2016 response to Plaintiff's October 28, 2016 RFI, which constitutes a Request for Information under 12 C.F.R. § 1024.36, violates 12 U.S.C. § 2605 because Wells Fargo failed to conduct a reasonable investigation with respect to Plaintiffs' account and failed to produce the requested documents.  Wells Fargo failed to send its response to Special Counsel despite the fact that the October 28, 2016 Request for Information included an authorization for release of records to Special Counsel signed by the Plaintiff.  In addition, the documents provided were for the Justice Property and not the Homestead Property as requested in the October 28, 2016 RFI.[12]  Finally, Wells Fargo failed to produce an exact copy of the life of loan transaction history but instead provided a manually general transaction history

---

[12] Almost a year later, Wells Fargo finally admitted that it was an error to send documents relating to the Justice Property and not the Homestead Property, as requested, in a subsequent RESPA response dated August 25, 2017, but otherwise stated that the account was handled appropriately."  *See* **Exhibit 33**, *supra*.

(for the wrong property). *See* **Exhibit 15**.

237. As a result of Wells Fargo's failure to conduct a reasonable investigation into Plaintiff's account and produce requested documents in response to Plaintiff's October 28, 2016 RFI, Plaintiff has been damaged. These damages include non-litigation fees relating to the review of Wells Fargo's deficient response and the drafting of subsequent RESPA correspondence, and multiple conferences between Plaintiff and her counsel regarding the substance of such correspondence. Plaintiff also suffered out-of-pocket expenses relating to Wells Fargo's failure to respond to the October 28, 2016 RFI, including postage and copy charges paid to send subsequent RESPA correspondence.

238. Plaintiff also suffered emotional-distress damages in the form of stress and anxiety, as discussed more fully below, based on the fact that Wells Fargo failed to investigate or fix Plaintiff's account and continued to misapply funds and charge Plaintiff unlawful interest and other charges not permitted under the loan documents and under applicable law. Plaintiff feared that she would lose her house, despite making her monthly mortgage payments.

239. Wells Fargo's January 5, 2017 response to Plaintiff's December 30, 2016 NOE, which was sent pursuant to 12 C.F.R. § 1024.35, violates 12 C.F.R. 2605, because Wells Fargo failed to conduct a reasonable investigation with respect to Plaintiffs' account and the documents Plaintiffs requested, and Wells Fargo failed to correct its error in failing to appropriately respond to Plaintiffs' previous October 28, 2016 RFI. Specifically, Wells Fargo claimed in its response that it could not confirm Plaintiff as active borrower, even though Plaintiff had previously provided to Wells Fargo, on numerous occasions, proof that she was the borrower as to the Homestead Property. Therefore, it is clear that Wells Fargo failed to conduct a reasonable investigation into

Plaintiff's status as borrower. Wells Fargo's response also violates 12 C.F.R. 2605 because it relates to the Justice Property, and not the Homestead Property as specified in the underlying NOE (and prior RFI to which the NOE relates).[13] *See* **Exhibit 19**.

240.    As a result of Wells Fargo's failure to respond adequately to Plaintiff's December 30, 2016 NOE, Plaintiff incurred additional non-litigation fees for reviewing of Wells Fargo's deficient response by counsel and for the drafting of additional RESPA correspondence in further effort to resolve the account errors.

241.    Plaintiff also suffered out-of-pocket expenses relating to Wells Fargo's failure to correct her account in response to the December 30, 2016 NOE, including postage and copy charges paid to send subsequent RESPA correspondence.

242.    If Wells Fargo had conducted a reasonable investigation into Plaintiff's account, it would have understood that it had been misapplying and/or failing to apply multiple payments made by Plaintiff. Wells Fargo's failure to correct the payment misapplication in Plaintiff's account caused further damage to Plaintiff and resulting in additional unlawful late charges, interest and other fees in excess of what Plaintiff owes under her mortgage loan. In addition, Wells Fargo's failure to credit Plaintiff's account has also unlawfully increased the amount of Wells Fargo's lien against Plaintiff's Homestead Property.

243.    Plaintiff also has been damaged in the form of emotional distress based on Wells Fargo's failure to correct her accounting response to the December 30, 2016 NOE and by Wells Fargo's continued misapplication of her payments.

---

[13] Again, Wells Fargo admitted in subsequent RESPA correspondence dated August 25, 2017 that its January 5, 2017 response to Plaintiff's December 30, 2016 NOE incorrectly provided information on the Justice Property and not the Homestead Property, as requested. *See* **Exhibit 33**, *supra*.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                    **PAGE 57**

244.    Wells Fargo's January 11, 2017 response to Plaintiff's December 30, 2016 RFI, sent pursuant to 12 C.F.R. § 1024.36, violates 12 U.S.C. § 2605 because the pay history provided was for the Justice Property and not the Homestead Property as requested.

245.    As a result of Wells Fargo's failure to conduct a reasonable investigation into Plaintiff's account or otherwise respond adequately to Plaintiff's December 30, 2016 RFI, Plaintiff has been damaged in the form of additional non-litigation fees in reviewing Wells Fargo's deficient responses and in drafting additional RESPA correspondence, emotional distress based on Wells Fargo's failure to fix her account and continued misapplication of her payments, and additional out-of-pocket expenses including postage and copy charges paid to send RESPA correspondence.

246.    Similarly, Wells Fargo's January 18, 2017 supplemental response to Plaintiff's December 30, 2016 RFI violates 12 U.S.C. § 2605(e)(2)(C)(i) and (ii) because it again references the Justice Property and not the Homestead Property.  *See* **Exhibit 22**.

247.    Again, Wells Fargo's failure to conduct a reasonable investigation into Plaintiff's account or otherwise respond adequately in its supplemental response to Plaintiff's December 30, 2016 RFI has damaged Plaintiff by causing her to incur additional interest and fees on her mortgage account, additional non-litigation legal fees, emotional distress based on Wells Fargo's failure to fix her account and continued misapplication of her payments, additional out-of-pocket expenses including postage and copy charges paid to send RESPA correspondence.

248.    Wells Fargo's January 25, 2017 response to Plaintiff's prior RFI and NOE violates 12 U.S.C. § 2605 because it incorrectly asserts that it had previously provided a payoff statement for the Homestead Property and that it had not received previous consent to speak with Special Counsel regarding this loan, despite having received four separate authorization letters consenting

to same. *See* **Exhibit 23**.

249.    Because Wells Fargo failed to conduct a reasonable investigation into Plaintiff's account or provide a reinstatement statement for the Homestead Property in its January 25, 2017 response to Plaintiff's RFI and NOE, Plaintiff was further damaged in the form of additional emotion distress and legal fees.  Specifically, Plaintiff incurred additional non-litigation legal fees because her counsel had to send additional RESPA correspondence to Wells Fargo.  Plaintiff incurred additional out-of-pocket expenses in the form of postage and copy charges.

250.    Wells Fargo also failed to correct the payment misapplication in Plaintiff's account, causing further damage to Plaintiff and resulting in additional unlawful late charges, interest and other fees in excess of what Plaintiff owes under her mortgage loan.  Wells Fargo's failure to credit Plaintiff's account has also unlawfully increased the amount of Wells Fargo's lien against Plaintiff's Homestead Property.

251.    Wells Fargo's March 22, 2017 response to Plaintiff's open RFIs includes transaction history information for the Homestead Property, but it was not a full transactional history for the life of the loan.  In addition, the Customer Account Activity Statement also provided was manually generated and not from Wells Fargo's system of record.  *See* **Exhibit 7**.  It is clear, therefore, that Wells Fargo's March 22, 2017 response violates 12 U.S.C. § 2605 because Wells Fargo failed to conduct a reasonable investigation with respect to Plaintiffs' account and failed to produce the requested documents.

252.    Plaintiff was damaged by Wells Fargo's deficient March 22, 2017 response to Plaintiff's open RFIs because Wells Fargo failed to conduct a reasonable investigation or provide Plaintiff with complete information.  As a result, Plaintiff was unable to understand the full extent

of Wells Fargo's payment misapplications. Plaintiff was damaged in the form of additional emotional distress and additional non-litigation legal fees for the subsequent RESPA correspondence Plaintiff needed to correct Wells Fargo's inadequate responses. Plaintiff also suffered additional out-of-pocket expenses in the form of gas and mileage when she traveled to her attorneys' office on May 25, 2017. At that meeting, Plaintiff and her counsel reviewed relevant documents, including pay histories and bank statements, to understand the payment misapplications by Wells Fargo and to develop further RESPA correspondence in hopes of forcing Wells Fargo to address the problems with her account.

253. Wells Fargo violated 12 C.F.R. 2605(e)(4) in its June 13, 2017 response by unilaterally extending the deadline for it to respond to Plaintiffs' outstanding RFIs and NOEs for almost sixty (60) days, which is beyond the limited extensions permitted under that regulation. *See* **Exhibit 28**.

254. This unilateral extension of time further damaged Plaintiff because Wells Fargo continued its payment misapplications and did not take reasonable efforts to understand Plaintiff's account or fix same. Plaintiff incurred additional non-litigation legal fees and expenses in conferring with her attorneys and in the drafting of additional RESPA correspondence in a further attempt to resolve the errors in her account. Plaintiff also incurred additional postage and copy charges in sending the correspondence. Wells Fargo's failure to credit Plaintiff's account has also unlawfully increased the amount of Wells Fargo's lien against Plaintiff's Homestead Property.

255. Wells Fargo's July 6, 2017 response to Plaintiff's May 25, 2017 NOE, which was sent pursuant to 12 C.F.R. § 1024.35, violates 12 C.F.R. § 2605 because Wells Fargo failed to conduct a reasonable investigation with respect to Plaintiff's account and the documents Plaintiff

requested, and Wells Fargo failed to correct its error in failing to appropriately respond to Plaintiff's NOE. *See* **Exhibit 31**. Specifically, the reinstatement quote included unlawful charges as set forth in this Complaint, and it did not correct the misapplication errors previously made by Wells Fargo.

256. Wells Fargo's continued failure to correct the misapplications on Plaintiff's account in response to Plaintiff's May 26, 2017 NOE caused additional emotional distress and legal fees, as Plaintiff and her counsel continued their efforts to make Wells Fargo correct the account. Plaintiff also suffered additional postage and copy charges in sending the correspondence. In addition, Wells Fargo's failure to correct Plaintiff's account has further damaged Plaintiff, because it has resulted in additional unlawful late charges, interest and other fees in excess of what Plaintiff owes under her mortgage loan. Wells Fargo's failure to credit Plaintiff's account has also unlawfully increased the amount of Wells Fargo's lien against Plaintiff's Homestead Property.

257. Wells Fargo's August 25, 2017 response to Plaintiff's May 26, 2017 RFI violates 12 C.F.R. § 2605, because the transactional history spreadsheet provided was manually generated and not from Wells Fargo's system of record, as requested. *See* **Exhibit 33**.

258. Wells Fargo's failure to provide a complete transaction history from its system of record in response to the May 26, 2017 RFI damaged Plaintiff because the information provided was not reliable. Therefore, Plaintiff was unable to use the information provided to assist her in resolving the problems with her account, further delaying her relief. Accordingly, Plaintiff suffered additional emotional distress as these issues persisted, and she incurred additional non-litigation legal fees. Plaintiff's counsel had to review the deficient response and engage in further RESPA correspondence as a result. Plaintiff also suffered additional postage and copy charges in sending

the correspondence.

259.     Further, Wells Fargo's September 15, 2017 response to Plaintiff's August 25, 2017 RFI violates 12 U.S.C. § 2605 because Wells Fargo failed to conduct a reasonable investigation with respect to Plaintiff's account and failed to produce the requested documents.  Specifically, Wells Fargo failed to produce copies of all "NOTS" servicing notes for relevant periods and all P309 screens and nesting screens from Wells Fargo's system of record.  Instead, Wells Fargo asserted that the screen prints from its system of record were "confidential, privileged, and/or proprietary information."  *See* **Exhibit 40**.

260.     Again, Wells Fargo's failure to conduct a reasonable investigation or produce requested documents in response to Plaintiff's August 25, 2017 RFI damaged Plaintiff, causing her emotional-distress damages and requiring her to incur additional non-litigation legal fees and out-of-pocket expenses, including postage and copying costs.

261.     Wells Fargo's October 17, 2017 response to Plaintiff's October 3, 2017 NOE, sent pursuant to 12 C.F.R. § 1024.35, violates 12 U.S.C. § 2605 because Wells Fargo fails to respond fully or appropriately to same. Instead of responding to and/or correcting the deficiencies outlined in the October 3, 2017 NOE, Wells Fargo responded by attaching the same response it made in its September 15, 2017 response, as described more fully above.  *See* **Exhibit 43**.

262.     Wells Fargo's failure to correct Plaintiff's account in response to Plaintiff's October 3, 2017 NOE has damaged Plaintiff, causing her continued emotional distress and requiring her to incur additional non-litigation legal fees and out-of-pocket expenses, including postage and copying costs. Wells Fargo also failed to correct the payment misapplication in Plaintiff's account, causing further damage to Plaintiff and resulting in additional unlawful late

charges, interest and other fees in excess of what Plaintiff owes under her mortgage loan. Wells Fargo's failure to credit Plaintiff's account has also unlawfully increased the amount of Wells Fargo's lien against Plaintiff's Homestead Property.

263. Wells Fargo's November 10, 2017 supplemental response to Plaintiff's October 3, 2017 NOE violates 12 U.S.C. § 2605 because it does not fix the accounting errors pointed out by Plaintiff. Instead, Wells Fargo simply attached another incomplete payment spreadsheet, rather than a transaction history from Wells Fargo's system of record. *See* **Exhibit 44**.

264. As before, Wells Fargo's failure to correct its errors in its supplemental response to Plaintiff's October 3, 2017 NOE has damaged Plaintiff, causing her continued emotional distress and requiring her to incur additional non-litigation legal fees in reviewing and responding to Wells Fargo's deficient requests, and out-of-pocket expenses, including postage and copying costs. Wells Fargo also failed to correct the payment misapplication in Plaintiff's account, causing further damage to Plaintiff and resulting in additional unlawful late charges, interest and other fees in excess of what Plaintiff owes under her mortgage loan. Wells Fargo's failure to credit Plaintiff's account has also unlawfully increased the amount of Wells Fargo's lien against Plaintiff's Homestead Property.

265. Wells Fargo's March 21, 2018 response to Plaintiff's March 2, 2018 NOE, sent pursuant to 12 C.F.R. § 1024.35, violates 12 U.S.C. § 2605 because it failed to provide an account history for the Justice Property, as requested in Plaintiff's August 25, 2017 RFI. *See* **Exhibit 46**. Instead, Wells Fargo stated that it had previously provided this information in correspondence dated September 21, 2017, but neither Plaintiff nor her attorneys ever received such correspondence.

266.    Wells Fargo's failure to provide an account history for the Justice Property in response to Plaintiff's March 2, 2018 NOE has damaged Plaintiff, causing her continued emotional distress and requiring her to incur additional non-litigation legal fees in reviewing and responding to Wells Fargo's deficient responses, and out-of-pocket expenses, including postage and copying costs. Again, Wells Fargo's failure to credit Plaintiff's account has also unlawfully increased the amount of Wells Fargo's lien against Plaintiff's Homestead Property.

267.    Wells Fargo also failed to acknowledge receipt of Plaintiff's October 28, 2016 RFI, January 5, 2017 NOE, August 10, 2017 NOE, and the September 7, 2017 RFI in violation of 12 U.S.C. § 2605(e)(1)(A).

268.    Wells Fargo's failure to acknowledge Plaintiff's RESPA correspondence damaged Plaintiff because it further delayed a resolution of the accounting errors perpetuated by Wells Fargo as to Plaintiff's account. Plaintiff suffered emotional-distress damages in that she did not know when her account would be fixed, and indeed, it remains unfixed as of the date of this Complaint. It is also an indication of Wells Fargo's failure to take these errors seriously. Plaintiff also incurred additional non-litigation legal fees and out-of-pocket expenses, including postage and copying costs, in sending the RESPA correspondence.

269.    Wells Fargo failed to respond timely to Plaintiff's May 25, 2017 NOE and May 26, 2017 RFI and unilaterally granted itself eight extensions of time to respond before finally responding on August 25, 2017. This exceeds the number of extensions permitted under 12 U.S.C. § 2605(e)(4).

270.    Wells Fargo acknowledged but failed to respond to Plaintiff's August 25, 2017 RFI in violation of 12 U.S.C. § 2605(e)(2).

271. Wells Fargo failed to respond to Plaintiff's September 7, 2017 RFI in violation of 12 U.S.C. § 2605(e)(2).

272. Wells Fargo's failure to respond appropriately to Plaintiff's RFIs and NOEs violates 12 U.S.C. § 2605.

273. Wells Fargo's unilateral extensions of time beyond regulatory limits, and its failure to respond to certain RESPA correspondence by Plaintiff has caused damage to Plaintiff, both emotionally and monetarily, and has caused her to incur additional non-litigation legal fees and expenses in a continued effort to get Wells Fargo to correct its bad accounting. In addition, Wells Fargo's continued failure to correct the payment misapplications in Plaintiff's account has caused further damage to Plaintiff, resulting in additional unlawful late charges, interest and other fees in excess of what Plaintiff owes under her mortgage loan.

274. Wells Fargo also has violated 12 U.S.C. § 2605 by failing to apply payments pursuant to the payment application provisions set forth in the underlying Homestead Note and Deed of Trust.

275. Additionally, Wells Fargo violated 12 U.S.C. § 2605 by misapplying funds to and from Plaintiff's escrow account, applying escrow payments in incorrect amounts or in amounts not disclosed to the Court, and providing contradictory information in its escrow analyses sent to Mr. El-Amin and the Court.

276. Wells Fargo's payment misapplications has caused Plaintiff to suffer monetary damages to the extent that she is incurring unlawful and unjustified interest, late fees and other charges, and to the extent that she is not getting any credit for certain payments. Wells Fargo's failure to credit Plaintiff's account has also unlawfully increased the amount of Wells Fargo's lien

against Plaintiff's Homestead Property.

277.    Moreover, RESPA requires that Wells Fargo comply with the requirements of the Truth in Lending Act ("TILA").  TILA requires that, "in connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency…."  15 U.S.C. § 1639f(a) (emphasis added).  Further, Regulation Z expands on the servicer's requirements in applying periodic mortgage payments, which it defines as "an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle." 12 C.F.R. § 1026.36(c)(1)(i).

278.    Wells Fargo failed, on multiple occasions, to timely and/or properly credit Plaintiff's payments made toward the Homestead Property by the Plaintiff and via Chapter 13 Trustee disbursements, which were, individually in many cases and cumulatively, more than sufficient to cover the Plaintiff's contractually due amounts each month, including principal, interest, and escrow.

279.    Wells Fargo's failure to timely and/or properly credit Plaintiff's mortgage payments violates 15 U.S.C. § 1639f and 12 C.F.R. § 1026.36(c)(1).

280.    Wells Fargo has demonstrated a pattern and practice of failing to comply with the Regulations by failing to appropriately and fully respond to Plaintiff's Requests for Information and Notices of Error, by failing to appropriately and competently apply payments to her loan account, and by failing to maintain borrower confidences for borrowers across the country.

281.    Besides other pending lawsuits, since January 10, 2014, the Consumer Financial

Protection Bureau ("CFPB"), the agency charged with enforcing RESPA, has collected more than 61,922 consumer complaints against Wells Fargo, with 33,548 of those complaints related to its mortgage services. Further, 8,032 complaints were made against Wells Fargo in connection with mortgage loan servicing, payments, and/or escrow account activities, and an astounding 17,355 complaints were made in connection with loan modification, collection, and foreclosure.[14]

282. A review of the over 60,000 complaints since January 10, 2014 show that Wells Fargo has a pattern or practice of noncompliance with regard to their mortgage servicing activities, including compliance with RESPA and its provisions.[15]

283. Plaintiff has suffered actual damages, including attorneys' fees and out-of-pocket expenses, as a result of Wells Fargo's willful violations of RESPA. Specifically, Plaintiff has incurred expenses for mailing multiple follow-up RESPA letters due to Wells Fargo's repeated failure to provide Plaintiff and her counsel with information relating to her Homestead Property. Moreover, Plaintiff has incurred mileage expenses because she has been forced to make multiple trips to her attorneys' office to drop off documents and to meet with her attorneys regarding Wells Fargo's failure to provide the requested information. In particular, after failing to comply with RESPA after receiving Plaintiff's first NOI and RFI, Plaintiff incurred extensive attorneys' fees costs for her attorneys to send subsequent NOEs and RFIs, none of which were appropriately responded to. During this time, Wells Fargo had a duty pursuant to RESPA to investigate her accounts and correct them, and respond accurately as required by RESPA, yet never did. During

---

[14] Consumer Financial Protection Bureau Consumer Complaint Database. Other related complaint topics include "Trouble during payment process (1,071 complaints), "Struggling to pay mortgage" (1,316 complaints), and "Other" (721 complaints). *Id.*

[15] *https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201703_cfpb_Monthly-Complaint-Report.pdf*

this time, Wells Fargo's misapplication of payments caused Plaintiff to incur additional interest charges, and caused the lien encumbering the Homestead Property to be greater than it should have been had Wells Fargo complied with the law. Finally, Wells Fargo, by failing to correct Plaintiff's mortgage loan account to conform to Wells Fargo's response to the notice of final cure, has essentially stolen the equity in Plaintiff's home and, upon information and belief, has caused Plaintiff to overpay on her mortgage loan. This has also caused an unlawful increase in the amount of Wells Fargo's lien on the Homestead Property.

284.    Plaintiff also suffered emotional-distress damages as a result of Wells Fargo's failure to investigate and fix her account. The constant threat of losing her home for the last ten years has caused her stress, anxiety and mental anguish during this time.

285.    Accordingly, Wells Fargo is liable to Plaintiff for actual damages, costs, attorneys' fees, and statutory damages of at least $2,000.00 per violation, pursuant to 12 U.S.C. § 2605.

**COUNT X**
**VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT**
**(AS TO DEFENDANT WELLS FARGO)**

286.    Plaintiff repeats and realleges the allegations in this complaint.

287.    Plaintiff is a "consumer" as that term is defined by the Texas Debt Collection Practices Act, set forth in Chapter 392 of the TEX. FIN. CODE (the "TDCA"), because Plaintiff is an individual with a consumer debt.

288.    Plaintiff's relationship with Wells Fargo arose out of a "consumer debt" as that term is defined in the TDCA, as the Plaintiff's obligation to Wells Fargo arose from a transaction primarily for personal, family, or household purposes.

289.    Wells Fargo regularly collects consumer debts and is a "debt collector" as that term is defined in the TDCA, because Wells Fargo directly engages in debt collection.

290.    Wells Fargo violated § 392.304(a)(8) and (19) of the TDCA because it misrepresented the character, extent, and amount of the Plaintiff's debts owed to Wells Fargo in statements and other default correspondence sent to the Plaintiff.

291.    Plaintiff has suffered actual damages, including attorneys' fees and out-of-pocket expenses, amongst others, and has suffered emotional-distress damages as a result of Wells Fargo's willful violations of the TDCA.

292.    Wells Fargo violated the TDCA, and Plaintiff is thus entitled to actual damages, attorneys' fees, and injunctive relief pursuant to § 392.403 of the TDCA.

## COUNT XI
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## (AS TO DEFENDANT WELLS FARGO)

293.    Plaintiff repeats and realleges the allegations in this complaint.

294.    Congress enacted the Fair Debt Collection Practices Act ("FDCPA") to regulate the collection of consumer debts by debt collectors.  The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. §1692e.

295.    The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation. *Eastman v. Baker Recovery Services (In re Eastman)*, 419 B.R. 711, 733 (Bankr. W.D. Tex. 2009); *see also Taylor v. Perrin, Landry, deLaunay & Durand*,

103 F.3d 1232, 1238 (5th Cir. 1997). Because the FDCPA imposes strict liability, there is no requirement that the actions taken by a debt collector "be intentional or actionable." *Eastman*, 419 B.R. at 728.

296. The FDCPA is also a remedial statute, and therefore must be construed liberally in favor of the debtor. *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445 (5th Cir. 2013).

297. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1692a.

298. Defendant Wells Fargo is a debt collector as defined in 15 U.S.C. § 1692a.

299. Upon information and belief, Wells Fargo obtained servicing rights to Plaintiff's mortgage loan on May 1, 2008.

300. Plaintiff's loan was delinquent at the time Defendant Wells Fargo obtained servicing rights to Plaintiff's mortgage loan.

301. In addition, Defendant Wells Fargo was engaged in a business, the primary purpose of which is the collection of consumer debt as defined in 15 U.S.C. § 1692a.

302. Wells Fargo violated 15 U.S.C. § 1692e generally, and 15 U.S.C. § 1692e(2) and (10) specifically, by making false and/or misleading representations to Plaintiff regarding the status of her mortgage loan account. Wells Fargo sent Plaintiff mortgage statements and other correspondence that demanded payment of amounts not actually owed on her mortgage loan.

303. Wells Fargo violated 15 U.S.C. § 1692f generally, and 15 U.S.C. § 1692f(1) specifically, by attempting to collect, and actually collecting, late fees and other charges in excess of amounts due under the mortgage Note, the Deed of Trust, Plaintiff's Chapter 13 plans, and federal bankruptcy law and rules.

304. Upon information and belief, Defendant Wells Fargo's actions described herein are the manifestation of a pattern and practice of conduct by Wells Fargo which is either required, or not specifically prohibited by its policies and procedures, to ignore the provisions of the Bankruptcy Code and fair debt collection laws applicable to it, and to illegally collect or attempt to collect debts from unsophisticated debtors. Accordingly, Defendant Wells Fargo's actions constitute unfair and unconscionable means to collect debts in violation of 15 U.S.C. § 1692f generally and §1692(f)(1) specifically.

305. As a direct and proximate result of Defendant's violations of the FDCPA, Plaintiff has been damaged.

306. Plaintiff is entitled to actual damages, statutory damages, and attorneys' fees as provided in 15 U.S.C. § 1692k.

**COUNT XII**
**ATTORNEYS' FEES**
**(AS TO ALL DEFENDANTS)**

307. Plaintiff repeats and realleges the allegations in this complaint.

308. Through the conduct described herein, Defendants have inflicted actual damages upon Plaintiff by holding and not applying or misapplying payments received, both from Plaintiff and from the Chapter 13 Trustee, by failing to disclose payment and claim amounts in her bankruptcy cases, by demanding amounts not owed, and by refusing and/or delaying, time and time again, to provide complete and comprehensive information to allow Plaintiff to determine the correct amount of her obligation to Wells Fargo with regard to the Homestead Property.

309. The Court can award Plaintiff's attorneys' fees against Defendants pursuant to its inherent powers, 11 U.S.C. § 105(a), Fed. R. Bankr. P. 3002.1, 12 U.S.C. §2605(f)(3) (RESPA), §

392.403 of the TDCA, § 1692k(a)(3) of the FDCPA, and Texas Civil Practice and Remedies Code § 38.001.

## VI. **REQUEST FOR INJUNCTIVE RELIEF**

310. Plaintiff repeats and realleges the allegations in this complaint.

311. The actions of Defendants show that it is their policy and procedure to ignore the directives and orders of the bankruptcy court and the Bankruptcy Code and Rules.

312. Plaintiff is entitled to an injunction barring Defendants from further collection of any amounts in excess of the disclosed, accurate monthly mortgage payment amount.

313. Plaintiff is entitled to an injunction requiring Wells Fargo to credit her Homestead account with payments it misapplied to the Justice account or failed to apply at all.

314. Plaintiff is entitled to an injunction requiring Defendants to correct wrongful credit reporting, and to otherwise remedy the adverse effects on the Plaintiff of Defendants' illegal actions.

315. Title 11 U.S.C. § 105 of the Code grants power to the Court to remedy the harms caused by Defendants' violations of the Code and Rules, and orders of the bankruptcy courts. Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate to facilitate implementation of Code, including the granting of sanctions for contempt, monetary relief for actual damages, including attorneys' fees and costs, and injunctive relief.

316. Plaintiff is also entitled to injunctive relief under the TDCA to prevent or restrain a violation of that chapter of the Texas Finance Code. TEX. FIN. CODE § 392.403(1).

317. Therefore, Plaintiff seeks injunctive relief that includes appropriate monetary sanctions, including payment of attorneys' fees and costs, for Defendants' violations as described

herein.

## REQUEST FOR ACTUAL DAMAGES, STATUTORY DAMAGES, PUNITIVE DAMAGES AND SANCTIONS

318. Plaintiff repeats and realleges the allegations in this complaint.

319. Plaintiff is also entitled to statutory damages as set forth herein.

320. As a result of Defendants activities, Plaintiff has incurred actual damages and attorneys' fees and costs.

321. Such damages are properly taxed against Defendants pursuant to the Court's inherent powers and its 11 U.S.C. § 105(a) powers by virtue of Defendants' violations of 11 U.S.C. § 524(i). Such attorneys' fees are also properly taxed against Defendants pursuant to Fed. R. Bankr. P. 3002.1(i), 12 U.S.C. §2605(f) (RESPA), and TEX. FIN. CODE § 392.403 (TDCA).

322. Plaintiff seeks that the Court award Plaintiff her actual damages, statutory damages, and attorneys' fees and costs, hold Defendants in contempt, and impose all available penalties, sanctions, and punitive damages in an amount sufficient to deter Defendants from future misconduct.

## PRAYER

WHEREFORE, Plaintiff requests that this Court grant the relief as requested herein in favor of Plaintiff by:

a) Awarding Plaintiff actual and statutory damages, including attorneys' fees and costs to which Plaintiff is entitled;

b) Awarding Plaintiff sanctions, injunctive relief, actual damages, punitive damages, and attorneys' fees and costs for Defendants' abuses of process and other violations of law;

c) Finding Defendants in contempt under the Court's inherent powers and 11 U.S.C. § 105 for abuse of process, abuse of the Bankruptcy Code and Rules, and abuse of

the federal bankruptcy system, and awarding Plaintiff appropriate relief, including attorneys' fees and costs, sanctions, and other such relief deemed appropriate by this Court;

d) Awarding Plaintiff pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and costs; and

e) Awarding such other relief as this Court may deem just and proper.

Respectfully submitted,

KELLETT & BARTHOLOW PLLC

*/s/ Karen L. Kellett*
Karen L. Kellett
State Bar No. 11199520
Theodore O. Bartholow, III ("Thad")
State Bar No. 24062602
Claude D. Smith
State Bar No. 24028778
Caitlyn N. Wells
State Bar No. 24070635
11300 N. Central Expressway
Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
kkellett@kblawtx.com

**ATTORNEYS FOR PLAINTIFF**